STATE, Respondent, v. PAEGELOW, Appellant.

*No. State 96. Submitted November 30, 1792.—Decided January 3, 1973.*
(Also reported in 202 N. W. 2d 916.)

For the appellant the cause was submitted on the briefs of *Schwiesow Law Offices* and *Philip H. Schwiesow* of Germantown.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

BEILFUSS, J. The defendant contends that his intoxication was such at the time of his arrest that admissions

made during the police interrogation should not have been received in evidence and that he was not competent at the time of the interrogation to waive the presence of an attorney. He further contends that the evidence without these admissions was not sufficient to sustain a finding of guilt.

On December 14, 1970, at 10:45 p. m., the Mequon police department received a call informing it that there was an automobile in a ditch on Freistadt Road in the outskirts of the city of Mequon. Officer Terry L. Tietyen arrived at the scene within minutes and found the car about 40 feet off the edge of the asphalt road in or near a farmer's field. The officer found the defendant alone, in an intoxicated condition, behind the wheel of the car with the shift lever in drive gear, the engine running and the lights on. There was one set of tire tracks in the snow from the traveled portion of the road to the field where the car was stuck in the snow, and no footprints going to or from the car. The officer did not see the defendant drive or operate the vehicle and he saw no one else at the scene.

Officer Tietyen opened the door of the vehicle and asked the defendant what happened and if he was hurt. The defendant's responses were "sort of incoherent" but he did state that he was driving the car. The officer then asked the defendant to get out of the car and come up onto the roadway. The defendant stepped out of the car and fell into the snow. He could hardly walk or keep his balance and had a strong odor of alcohol. The officer then helped the defendant to the road and asked him to perform various sobriety tests. After performing the tests the defendant was arrested on a charge of driving while under the influence of an intoxicant and given his *Miranda* [1] rights. He was taken to the Mequon police

---

[1] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

department at about 11 p. m., where a video tape was made of his actions and statements.

At the station the defendant was again given his *Miranda* rights warning by the interrogating officer. The defendant then waived those rights in writing, and specifically the right to have an attorney present at the interrogation.

In response to questions appearing on a police investigation form, the defendant stated that he was driving the car; that he got off work about 4 p. m.; that he had eaten two cheeseburgers about 5:30 p. m.; that he had a couple of beers and one shot of brandy between 4:30– 5 p. m. and 6–6:30 p. m.; that he did not have any alcoholic beverage since he ran in the ditch, did not have any alcoholic beverage in the car and he was not intoxicated now [time of the interrogation]. He also stated the day correctly as Monday, December 14th; time incorrectly as 10:30 p. m. [it was 11:30 p. m.]; and his present whereabouts as West Bend when in fact it was Port Washington.

The investigation form also set forth that the defendant's balance and walking were poor, that he was able to turn fairly well, touch his nose and understand instructions.

The defendant took a chemical breathalyzer test which revealed a .22 percent by weight blood alcohol reading. The defendant, at trial, stipulated that when he was taken to the police station he was intoxicated and under the influence of an intoxicant within the meaning of the statute.

Bruce Hansen, a witness for the state, testified that on December 14, 1970, between 9:30 and 9:45 p. m., he left his house to take a friend home when he saw a car approaching from the west. Just before getting into his car he next saw the car in the ditch. He started up his car and drove past the car in the ditch or field and blew his

horn to notify the occupant that he was going for help. He then proceeded to take his companion home and on the way notified a garage about the accident. He returned home about 10:30 p. m., and observed that the car was still in the ditch with the lights on, and that there was someone behind its steering wheel. He then called the police who arrived a few minutes later.

The defendant then testified to his own version of what had happened. He stated that around 5 p. m., before he finished work that day, he went to Edsel's Country Inn to eat. He ate a couple of hamburgers, drank two beers and purchased three-fourths of a pint (a tenth or 12 ounces) of blackberry brandy which he took with him upon leaving Edsel's around 8:15 p. m. While driving down the road he attempted to light a cigarette and the lighter fell to the floor. When he bent down to look for it the next thing he knew he was in the field. It was about 8:30 then and the car was immovable. He then started drinking the brandy since it was cold out and he was "pretty mad" at himself. He sat and waited for someone to come along for help. No one passed by or came except the police. He stated he saw no one and did not hear Hansen toot his horn, nor did he ever toot his own horn at anyone. By the time the police officer arrived the brandy had been entirely consumed. The defendant testified the reason he did not tell the officer about the bottle was because he felt that if the officer found out things would go "worse" for him. He testified that while at the police station he thought he was at the West Bend station and not the Port Washington station.

At the trial defendant's counsel objected to any admissions or statements made by the defendant during the police interrogation upon the ground that the defendant was too intoxicated to voluntarily and knowingly waive

his constitutional rights as decreed by *Miranda,* or to waive his right to have counsel present.

The trial court, of course, heard the testimony, and also had the police interrogation form and viewed the video tape. In ruling on the objection, Judge GRADY stated:

"OK. Well, my view of the video allows me to conclude that Mr. Paegelow at the time he was advised of the so-called *Miranda* admonitions or rights voluntarily waived his rights thereunder and permitted the interrogation to continue. He signed it in a fairly legible hand. The statement made after that as to where he was was obviously wrong, saying he was in West Bend when he was not, although he knew that he was drinking Coronet brandy and beer. He was not in that state of intoxication where he did not know what he was doing. He certainly would be able to navigate without assistance and, therefore, I will find that it was a voluntary waiver of his rights and the questioning thereafter was proper and the admissions made therein are admitted in evidence in this case."

Certainly the degree of alcoholic influence upon a person so as to impair his ability to safely operate or drive a motor vehicle is considerably less than the degree of intoxication that would render a person incapable of being able to understand and voluntarily waive his constitutional rights.

Within the limits of our appellate review, we conclude that Judge GRADY could justifiably find that the defendant's state of intoxication was not so extreme that he could not knowingly and voluntarily waive his *Miranda* rights. It was not error to receive in evidence the police interrogation, including the video tape.

The defendant argues the evidence is not sufficient to prove beyond reasonable doubt that he was under the influence of an intoxicant at the time he lost control of his vehicle and it went into the ditch.

The record amply demonstrates that the state did prove the defendant's guilt beyond a reasonable doubt

under sec. 346.63 (1) (a), Stats. No reasonable hypothesis of innocence exists.

This court has stated in *State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 113, 194 N. W. 2d 808, that the standard for reviewing questions as to the sufficiency of the evidence is:

"While the state must prove defendant's guilt beyond a reasonable doubt, on appeal this court's review is limited to determining whether the evidence adduced, believed and rationally considered by a jury was sufficient to prove defendant's guilt beyond a reasonable doubt. Reversal is required only when the evidence considered most favorably to the state and the conviction is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt."

And in *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725, that:

". . . A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. Our review of the record in response to a challenge to the sufficiency of the evidence is so limited by these rules."

In light of these standards and the fact that the defendant's admissions were properly received in evidence, plus the testimony of the state's witnesses, the defendant's guilt was proven beyond a reasonable doubt. The trial court as the trier of fact simply disbelieved the defendant's version given at the trial. The defendant's trial version as contrasted to his prior admissions was clearly in contradiction. Under such circumstances, when

the witness' testimony is contradictory the judge or jury, as the trier of fact, can believe and accept only such parts thereof as it finds to be most credible.[2] *Mandella v. State* (1947), 251 Wis. 502, 29 N. W. 2d 723. Here it is apparent that the judge felt the truth and credibility was with his prior admissions and the state's other evidence, and not all of his testimony at trial.

Based on the specific facts heretofore mentioned, the evidence points to only one conclusion—that is, the defendant must have been under the influence of alcohol while driving his car on the road immediately prior to the time the car ran off the road. To reiterate briefly, Bruce Hansen saw the car drive past him on the road and within the next few seconds saw it in the ditch. The officer saw only the defendant at the scene. The defendant was intoxicated while behind the steering wheel with the car engine running and in forward gear. He admitted he drove the car. The defendant was arrested and taken to the station. He was given warning of his *Miranda* rights twice and waived them. He then stated at the interrogation that he had no alcoholic beverages in the car, nor had he had any since the accident when parked in the field. The police report clearly showed that he was intoxicated to the extent of .22 and defendant does not contest this fact. This evidence adduced, believed and rationally considered by the trial court was sufficient to prove the defendant's guilt beyond reasonable doubt.

*By the Court.*—Judgment affirmed.

---

[2] The rule is no different when the court is the trier of fact. *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379. In a trial before the court sitting by consent without a jury, it deals with the facts in all respects as a jury would do. *State v. Evjue* (1949), 254 Wis. 581, 37 N. W. 2d 50.