STATE of Wisconsin, Plaintiff-Respondent,

v.

Duane C. BURKMAN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 79-011-CR. Submitted on briefs May 7, 1980.—Decided June 3, 1980.*

(Also reported in 292 N.W.2d 641.)

For the appellant-petitioner the cause was submitted on the briefs of *Bruce A. Tammi* and *Schneider & Tammi* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *E. Michael McCann,* district attorney for Milwaukee county and *James J. Martin,* assistant district attorney.

CONNOR T. HANSEN, J. The trial court denied the admission into evidence of the results of a chemical test administered by the police to determine the concentration of alcohol in the blood of Burkman at the time of his arrest. This ruling of the trial court was based upon the fact that the police had not complied with all of the provisions of the Wisconsin Administrative Code when administering the test.[1]

At trial, on appeal,[2] and now on review, the principal argument advanced by Burkman is that, as a result of several 1977 statutory amendments, the trial court erred in allowing the state to introduce corroborating physical evidence to prove that he was under the influence of an intoxicant at the time he was driving a motor vehicle.

---

[1] Wis. Adm. Code sec. MVD 25.05(3)(a) provides:

"**MVD 25.05. Approved techniques and methods of performing chemical analysis of the breath.**

". . .

"(3) Procedures for quantitative chemical breath analysis for the determination of the concentration of alcohol in the blood shall include, but are not limited to, the following controls in conjunction with the testing of each subject:

"(a) Continuous observation of the subject for a minimum of 20 minutes prior to the collection of a breath specimen, during which time the subject shall not have ingested alcohol, regurgitated, vomited or smoked."

[2] The decision of the court of appeals is unpublished.

His argument in effect is that under the present statutes a person cannot be convicted of this offense solely on the basis of corroborating physical evidence. We reach the opposite conclusion, as did the court of appeals and the trial court.

At trial Thomas McKenna testified that he was in his house watching television on August 27, 1978, and at approximately 9:30 p.m. he heard a crash outside. He went outside and saw a pick-up truck on the sidewalk approximately one block from his house and a tree lying in the street. The truck was facing in the wrong direction as if it had been proceeding on the wrong side of the street before it came to rest. McKenna stated the truck had been involved in an accident and he believed the accident resulted from the truck striking the tree. He then went inside his house and told his wife to call an ambulance.

McKenna further testified that he went outside again and walked over to the truck. The truck was not in the place where it was when he first saw it. Burkman (hereinafter defendant) was seated behind the wheel of the truck and McKenna asked him if he had been injured. The defendant replied that he was all right and started to drive away in the truck which was severely damaged. McKenna ran alongside the truck for approximately a half block and told the defendant that he should not leave the scene of an accident. The defendant then stopped the truck and got out. When he got out of the truck, his balance was very unsteady, he seemed to "weave and buck" as he stood, and he was slurring his words. After the police arrived and asked the defendant for his driver's license, he had difficulty removing his wallet. When he opened his wallet, the contents spilled to the ground. At this time the defendant was still unsteady on his feet, and McKenna did not observe any cuts or bruises on him.

John Blochowiak, a Milwaukee police officer, testified that at approximately 9:17 p.m. on August 27, 1978, he was dispatched to investigate a call regarding an attempt by a driver to leave the scene of an accident. When he arrived at the scene at 9:20 p.m., he observed a pick-up truck which had been involved in an accident and had extensive front-end damage, and he spoke to the defendant who was standing at the rear of the truck. The defendant had a strong odor of alcohol on his breath, he was very unstable on his feet but could stand without aid, and his speech was slurred and difficult to understand. He had no signs of injury nor did he complain of any injury. The officer administered the finger-to-nose test to the defendant, but the defendant was not able to touch his nose. The defendant also swayed and staggered when he walked, he turned around with difficulty and his turns were uncoordinated. The defendant was then conveyed to the Second District police station and at that time he was cooperative but he was still unstable on his feet. The officer testified, based on his thirteen years on the police force and contacts with people who were intoxicated, that in his opinion the defendant was under the influence of an intoxicant.

As its final witness, the state called Michael Neeb, a Milwaukee police officer who administered a breathalyzer test to the defendant on August 27, 1978, at 10:23 p.m. Neeb testified that he did not have the defendant under continuous observation for twenty minutes prior to the time that he administered the breathalyzer test to him. The defendant objected to the admission of the results of the breathalyzer test, on grounds of lack of foundation, because of Neeb's failure to comply with the procedures set forth in the Wisconsin Administrative Code for administering a breathalyzer test. The trial court ruled that the results of the breathalyzer test were inad-

missible in evidence because Neeb failed to comply with
Wis. Adm. Code sec. MVD 25.05(3)(a), which requires
that the subject be kept under continuous observation
for at least twenty minutes prior to the collection of the
breath specimen.

The defense called as its first witness Donghee Wilbon,
a fellow employee of the defendant. Wilbon testified that
on August 27, 1978, he was with the defendant at their
union picnic almost continuously from approximately
noon until 8:30 or 8:45 p.m. The defendant had four
to six drinks during that time, and at the time the de-
fendant left the picnic at 8:30 or 8:45 p.m. his speech
and walk were normal.

Gordon Brubaker, who also worked with the defendant,
testified that he saw the defendant arrive at the union
picnic at noon on August 27, 1978; that he saw the de-
fendant on and off during the day; that he never saw
the defendant with a drink in his hand during the day,
and that the defendant walked and talked normally
when Brubaker last saw him at approximately 8 p.m.
and seemed all right.

The defense rested its case after Brubaker's testimony
and the state called Michael Neeb as a rebuttal witness.
Neeb testified that the defendant had a strong odor of
alcohol on his breath when he saw the defendant at the
Second District police station on August 27, 1978.

Consistent with his pretrial motion that corroborating
evidence as to intoxication not be considered by the
jury, the defendant asked the trial court to instruct the
jury that it could find the defendant guilty only if it
found beyond a reasonable doubt that the defendant's
blood contained 0.1 percent or more by weight of alcohol
at the time he drove the motor vehicle. The trial court
rejected the defendant's requested instruction and in-

cluded Wisconsin Jury Instruction—Criminal 2663[3] in its entirety in its instructions to the jury.

The jury returned a verdict of guilty, whereupon the trial judge entered a judgment of conviction and imposed a penalty.

---

[3] Wisconsin Jury Instruction—Criminal 2663 reads:

"2663 OPERATING MOTOR VEHICLE WHILE UNDER INFLUENCE OF INTOXICANT.

"Section 346.63(1)(a) of the Vehicle Code of Wisconsin is violated by one who operates a motor vehicle while under the influence of an intoxicant.

"Before the defendant may be found guilty of operating a vehicle while under the influence of an intoxicant, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following two elements of this offense:

"First, that the defendant operated a motor vehicle;

"Second, that the defendant was under the influence of an intoxicant at the time of said operation of the motor vehicle.

"The first element of this offense requires that the defendant operated a motor vehicle. A motor vehicle is 'operated' as soon as it is set in motion.

"The second element of this offense requires that the defendant was under the influence of an intoxicant at the time he operated the motor vehicle.

"(The expression 'under the influence of an intoxicant' covers not only all the well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors (including beer) and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess.)

"(A person who is even to the slightest extent under the influence of an intoxicant in the common and well-understood acceptation of the term is, to some degree at least, less able either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern motor vehicle with safety to himself and the public. Not every man who has consumed alcoholic beverages falls within the ban of the (statute) (ordinance). If that consumption of alcoholic beverages does not cause him to be influenced in the ordinary and well-understood meaning of the term, he is not

The defendant contends that the trial court erred in admitting corroborating physical evidence to establish that the defendant was under the influence of an intoxicant. It is his contention that the only method of establishing a violation of sec. 346.63(1), Stats., is by proving that the alcohol by weight in the defendant's blood is 0.1 percent or more. He concludes that, by virtue of sec. 346.63(4), corroborating evidence of intoxication is inadmissible and that the only evidence which is admissible is evidence which directly relates to the issue of whether the defendant had 0.1 percent or more by weight of alcohol in his blood at the time he operated a motor vehicle.

Prior to its repeal and recreation by ch. 193, sec. 14, Laws of 1977, sec. 346.63, Stats. 1975, provided in part:

"346.63 **Operating under influence of intoxicant.** (1) It is unlawful for any of the following to drive or operate a motor vehicle:

"(a) A person who is under the influence of an intoxicant or controlled substance;"

That section did not state what constituted being "under the influence of an intoxicant." However, sec. 885.235, Stats. 1975, set forth the procedure under which evidence of the amount of alcohol in a person's blood as shown by a chemical analysis was admissible on the issue of whether the person was under the influence of an intoxicant.

The present sec. 346.63(1), Stats. 1977, provides:

"346.63 **Operating under influence of intoxicant.** (1) No person may drive or operate a motor vehicle while

under the influence of an intoxicant within the meaning of the statute.)

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant was operating a motor vehicle while under the influence of an intoxicant, then you should find the defendant guilty.

"If, however, you are not so satisfied, then you must find the defendant not guilty."

under the influence of an intoxicant or a controlled substance."

Sub. (4) of sec. 346.63 states what weight is to be given to evidence showing the amount of alcohol in a person's blood:

"(4) A person whose blood contains 0.1% or more by weight of alcohol is under the influence of an intoxicant for purposes of this section. Notwithstanding s. 885.235 (1) (c), a chemical analysis of a person's blood, breath or urine which has been admitted into evidence and which shows that there was 0.1% or more by weight of alcohol in the person's blood is sufficient evidence, *without corroborating physical evidence*, on which to base a finding that the person's blood contained 0.1% or more by weight of alcohol." (Emphasis supplied.)

Disagreement as to the interpretation of the above statutory sections constitutes the basis for this review. The defendant contends that the first sentence of sec. 346.63(4), Stats., specifically defines "under the influence of an intoxicant" as having 0.1 percent or more by weight of alcohol in one's blood and, therefore, the only evidence which is admissible in a prosecution for a violation of sec. 346.63(1) is a chemical analysis of a person's blood, breath or urine.

The primary source for the construction of a statute is the language of the statute itself. *State v. Tollefson,* 85 Wis.2d 162, 167, 270 N.W.2d 201 (1978) ; *Wis. Environmental Decade v. Public Service Comm.,* 81 Wis.2d 344, 350, 260 N.W.2d 712 (1978).

The first sentence of sec. 346.63(4), Stats., states, "A person whose blood contains 0.1% or more by weight of alcohol is under the influence of an intoxicant for purposes of this section." Although this sentence defines "under the influence of an intoxicant" in terms of blood

alcohol level, it does not state that a chemical analysis indicating blood alcohol level constitutes the exclusive method of proving a person is under the influence of an intoxicant. Nor does it imply that corroborating physical evidence is irrelevant. It only sets forth one means of proving that the defendant was under the influence of an intoxicant, without limiting in any way the introduction of corroborating physical evidence of intoxication. This becomes especially clear when this first sentence of sec. 346.63(4) is read in conjunction with the second sentence.

The second sentence of sec. 346.63(4), Stats., provides that a chemical analysis which shows that there was 0.1 percent or more by weight of alcohol in the person's blood and which has been admitted into evidence is sufficient evidence, without corroborating physical evidence, on which to base a finding that the person's blood contained 0.1 percent or more by weight of alcohol, or, in other words, on which to base a finding that the person was under the influence of an intoxicant. That sentence states that a chemical analysis showing a blood alcohol content of 0.1 percent or more is *sufficient* evidence to prove that a person was under the influence of an intoxicant and that such a chemical analysis is sufficient evidence without corroborating physical evidence. This means that corroborating evidence is not necessary for a conviction under those circumstances. The statute does not state that corroborating evidence is to be excluded.

The second sentence of sec. 346.63(4), Stats., begins with the phrase, "Notwithstanding s. 885.235(1)(c)."[4]

---

[4] "885.235 Chemical tests for intoxication. (1) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant when operating or driving a motor vehicle, or while handling a firearm, evidence of the amount of alcohol in such person's blood at the time in question as shown by chemical analysis of a sample of his breath, blood or urine is admissible on the issue of whether he was under the influence of

Therefore the two statutes must be read in conjunction with each other.

Sec. 885.235(1) (c), Stats., provides that a chemical analysis showing "that there was 0.1% or more by weight of alcohol in the person's blood is prima facie evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence

an intoxicant if such sample was taken within 2 hours after the event to be proved. Such chemical analysis shall be given effect as follows without requiring any expert testimony as to its effect:

"(a) The fact that the analysis shows that there was five-hundredths of one per cent or less by weight of alcohol in the person's blood is prima facie evidence that he was not under the influence of an intoxicant;

"(b) The fact that the analysis shows that there was more than 0.05% but less than 0.1% by weight of alcohol in the person's blood is relevant evidence on the issue of intoxication but is not to be given any prima facie effect;

"(c) The fact that the analysis shows that there was 0.1% or more by weight of alcohol in the person's blood is prima facie evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants.

"(2) The concentration of alcohol in the blood shall be taken prima facie to be three-fourths of the concentration of alcohol in the urine.

"(2a) The concentration of alcohol in 2100 cubic centimeters of deep lung or alveolar breath shall be prima facie to be equal to the concentration of alcohol in 1 cubic centimeter of blood when equilibrium has been reached.

"(3) If the sample of breath, blood or urine was not taken within 2 hours after the event to be proved, evidence of the amount of alcohol in the person's blood as shown by the chemical analysis is admissible only if expert testimony establishes its probative value and may be given prima facie effect only if such effect is established by expert testimony.

"(4) The provisions of this section relating to the admissibility of chemical tests for intoxication *shall not be construed as limiting the introduction of any other competent evidence bearing on the question of whether or not a person was under the influence of an intoxicant.*" (Emphasis supplied.)

thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants." Sec. 885.235 (1) (c) sets forth a requirement that corroborating physical evidence of intoxication be introduced in addition to the results of a chemical analysis in order to prove that a person was under the influence of an intoxicant. However, when sec. 885.235 (1) (c) is read in conjunction with sec. 346.63 (4), it is readily apparent that sec. 346.63 (4) eliminates the mandatory requirement that the state must introduce corroborating physical evidence, but there is no language in any statute which can be interpreted as prohibiting the introduction of corroborating physical evidence.

The language of sec. 346.63 (4), Stats., is unambiguous in eliminating the mandatory requirement that the state introduce corroborating physical evidence of intoxication in addition to the results of a chemical analysis in order to convict a person of driving while under the influence of an intoxicant. Reasonably well-informed persons could not understand the statute to mean that only the results of a chemical analysis are admissible at trial, as the defendant argues. It is a well established principle that when the statutory language is unambiguous, the intention of the legislature must be arrived at by giving the statutory language its ordinary and accepted meaning. *State v. Engler,* 80 Wis.2d 402, 406, 259 N.W.2d 97 (1977).

The defendant's argument that sec. 346.63 (4), Stats., precludes the introduction of corroborating physical evidence also ignores sec. 885.235 (4), which provides:

"(4) The provisions of this section relating to the admissibility of chemical tests for intoxication shall not be construed as limiting the introduction of any other competent evidence bearing on the question of whether or not a person was under the influence of an intoxicant."

This subsection of 885.235 was left unchanged by the 1977 Special Session and it clearly permits the introduction of corroborating physical evidence in addition to the results of chemical tests. The interpretation of sec. 346.63(4) urged by the defendant would prevent the admission of such evidence.

Statutes relating to the same subject matter are to be construed together and harmonized. *Glinski v. Sheldon,* 88 Wis.2d 509, 519, 276 N.W.2d 815 (1979) ; *Madison v. Hyland, Hall & Co.,* 73 Wis.2d 364, 370, 243 N.W.2d 422 (1976), *appeal dismissed* 429 U.S. 953 (1976) ; *State v. Duffy,* 54 Wis.2d 61, 64, 194 N.W.2d 624 (1972). Secs. 885.235(4) and 346.63(4), Stats., can be reasonably construed together. Sec. 346.63(4) eliminates the mandatory provision of sec. 885.235(1)(c) that required the state to introduce corroborating physical evidence of intoxication in addition to the results of a chemical test in order to convict a person of driving under the influence of an intoxicant, but it does not preclude the introduction of corroborating physical evidence.

The defendant's interpretation of sec. 346.63(4), Stats., leads to absurd results. A statute should be construed to avoid an unreasonable or absurd result. *Wis. Environmental Decade v. Public Service Comm.,* 84 Wis. 2d 504, 528, 267 N.W.2d 609 (1978) ; *Schwartz v. ILHR Dept.,* 72 Wis.2d 217, 222, 240 N.W.2d 173 (1976). In the instant case the trial court excluded the results of the breathalyzer test because the state failed to comply with Wis. Adm. Code sec. MVD 25.05(3)(a). If we were to construe sec. 346.63(4) in the manner advocated by the defendant, we would foreclose the possibility of a conviction for driving while under the influence of an intoxicant every time a chemical test could not be introduced into evidence, even though competent physical evidence indicating intoxication was available. This

makes no logical sense, and we are not persuaded by the argument of the defendant that absent an admissible chemical analysis, the statutes preclude the introduction of competent corroborating evidence to prove that a person was driving or operating a motor vehicle while under the influence of an intoxicant.

The defendant also contends that regardless of whether or not the trial court erred in allowing the introduction of corroborating physical evidence, there was insufficient evidence to support the jury verdict finding the defendant guilty of operating a motor vehicle while under the influence of an intoxicant.

When the defendant challenges the sufficiency of the evidence, the test is whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. *Maclin v. State,* 92 Wis.2d 323, 332, 284 N.W.2d 661 (1979); *State v. LaTender,* 86 Wis.2d 410, 425, 273 N.W.2d 260 (1979); *Kohlhoff v. State,* 85 Wis.2d 148, 153, 270 N.W.2d 63 (1978); *State v. Paegelow,* 56 Wis.2d 815, 821, 202 N.W.2d 916 (1973). The test is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt, but whether this court can conclude that the trier of fact could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. *Frankovis v. State,* 94 Wis.2d 141, 148, 287 N.W.2d 791 (1980); *Krueger v. State,* 84 Wis.2d 272, 282, 283, 267 N.W.2d 602 (1978), cert. denied, 439 U.S. 874 (1978). Reversal is only required when the evidence considered most favorably to the state and the conviction is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt."

*Lhost v. State,* 85 Wis.2d 620, 628, 271 N.W.2d 121 (1978) ; *Bere v. State,* 76 Wis.2d 514, 528, 251 N.W.2d 814 (1977) ; *State ex rel. Kanieski v. Gagnon,* 54 Wis.2d 108, 113, 194 N.W.2d 808 (1972).

Two elements must be proven in order to convict a defendant of a violation of sec. 346.63(1), Stats.: (1) that the defendant was driving or operating a motor vehicle; and (2) that the defendant was under the influence of an intoxicant at the time that he was driving or operating the motor vehicle. Sec. 346.63(1), Stats. *See: Milwaukee v. Johnston,* 21 Wis.2d 411, 414, 124 N.W.2d 690 (1963) ; *Shawano County v. Wendt,* 20 Wis.2d 29, 30, 121 N.W.2d 300 (1963).

There is no dispute that the defendant was "driving" a motor vehicle as that term is defined in sec. 346.63(3) (a), Stats.[5] Thus, the only question is whether he was under the influence of an intoxicant at the time he drove the motor vehicle. Thomas McKenna testified that after the accident in which the defendant's truck struck a tree, the defendant appeared "very unsteady," seemed to "weave and buck," slurred his speech and had difficulty removing his wallet from his pocket. Officer Neeb testified that the defendant had a strong odor of alcohol on his breath when he was given the breathalyzer test. Officer Blochowiak testified that the defendant had a strong odor of alcohol on his breath at the time he was arrested, was very unstable on his feet, slurred his speech, and was unable to touch his nose with the forefinger of either hand when his eyes were closed. Blochowiak also stated that the defendant swayed and staggered when he walked, he turned around with difficulty

[5] Sec. 346.63(3)(a), Stats., provides:

"(3) In this section:

"(a) 'Drive' means the exercise of physical control over the speed and direction of a motor vehicle while it is in motion."

and his turns were uncoordinated. Blochowiak testified that, in his opinion, the defendant was under the influence of an intoxicant. This court has stated that a lay witness, who has had the opportunity to observe the facts upon which he bases his opinion, may give his opinion as to whether a person at a particular time was or was not intoxicated. *Milwaukee v. Bichel,* 35 Wis.2d 66, 69, 150 N.W.2d 419 (1967); *Milwaukee v. Johnston, supra,* at 414. Such opinion evidence is competent and the evaluation of the opinion is for the trier of facts. *Milwaukee v. Kelly,* 40 Wis.2d 136, 138, 161 N.W.2d 271 (1968); *Milwaukee v. Thompson,* 24 Wis.2d 621, 624, 625, 130 N.W.2d 241 (1964); *Milwaukee v. Johnston, supra,* at 415.

The two defense witnesses testified that they had seen and had been with the defendant at a union picnic. One witness admitted that the defendant had a few drinks, but testified that he did not drink to excess and appeared normal when he left the picnic. The other witness testified that he never saw the defendant with a drink in his hand and that the defendant appeared normal when he was last seen.

When the evidence is viewed most favorably to the state and the conviction, it cannot be concluded as a matter of law that no trier of fact could be convinced beyond a reasonable doubt that the defendant operated his motor vehicle while under the influence of an intoxicant. The evidence was sufficient to support the conviction and the decision of the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.