STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Clarence R. VICK, Defendant-Appellant.

Supreme Court

*No. 80–1046. Argued November 2, 1981.—*
*Decided December 1, 1981.*

(Also reported in 312 N.W.2d 489.)

For the respondent-petitioner there were briefs by *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general, and oral argument by *Edward S. Marion,* assistant attorney general.

For the defendant-appellant there was a brief by *Larry I. Hanson, Timothy J. Casper* and *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison, and oral argument by *Larry I. Hanson.*

WILLIAM G. CALLOW, J. This is a review of an unpublished decision of the court of appeals reversing the judgment of Dane county circuit court Judge Mark A. Frankel which convicted the defendant of operating a motor vehicle while under the influence of an intoxicant contrary to sec. 346.63(1), Stats. The trial court entered judgment on the verdict after trial to a jury.

Because the facts in this case are unique, we set them out in detail. On November 16, 1979, at approximately 5 p.m., Wisconsin State Patrol Trooper Delburn Walter observed defendant's vehicle traveling east on County Trunk Highway TT, cross over the center median of the road, and return to its proper lane. Walter followed the vehicle and observed it weave continuously in its own lane, going from the center median to the right edge of the road some eight to ten times, although the vehicle did not re-cross the center median. Walter followed the vehicle for about a mile before turning on his red lights. When the vehicle failed to pull over, Walter pulled alongside the vehicle twice. The first time the driver glanced at him, the second time he kept his eyes straight ahead. Walter continued to pursue the vehicle, honking his horn and flashing his headlights until the vehicle finally stopped directly ahead of him in the eastbound lane of traffic. Walter estimated that he pursued the vehicle approximately 2½ miles between the time he put his red lights on and the time the vehicle stopped. The defendant testified that Walter pulled next to him only once and that he immediately stopped his vehicle.

Walter testified that he exited his squad car, and as he approached the vehicle, he recognized the driver to be Clarence Vick (defendant), who was a personal acquaintance. As Walter spoke with the defendant, he detected a strong odor of alcohol. When Walter asked defendant for his driver's license, defendant answered with slurred

speech. The defendant remained argumentative and uncooperative and was unable to perform the standard field sobriety heel-to-toe test. Defendant was arrested at approximately 5:10 p.m. on a charge of driving a vehicle while under the influence of an intoxicant. Walter testified that while en route to the police station, defendant stated he had picked up a friend at the hospital, stopped for a sandwich and a few drinks, took his friend home, stopped at Woods Tavern for a few drinks, and then started home. The defendant testified he stopped at Woods Tavern at approximately 4:30 p.m. where he had two brandy and sours and a glass of water before proceeding home at about 4:55 p.m. The bartender verified this at trial. Although the defendant admitted taking a friend home from the hospital, he denied they had stopped earlier in the afternoon for a sandwich and a few drinks and denied making such a statement to Walter. A nurse who was caring for defendant's sick friend testified that the friend was much too ill to have stopped for a sandwich and drinks on the way home from the hospital. Defendant denied that he was uncooperative during the arrest.

Defendant testified at trial that a 1942 accident left him paralyzed on the left side of his body, rendering him incapable of walking a straight line and causing him to slur his speech. The bartender-owner of Woods Tavern testified that she had known defendant for some time and that he always slurred his words. Walter testified that he had known defendant for many years and that he had noticed there was "something different" about defendant's walk.

State Patrol Trooper John Bruns administered a breathalyzer test to defendant at 5:46 p.m., approximately 36 minutes following his arrest. The test revealed that defendant's blood contained 0.13 plus percent by weight

of alcohol. Pursuant to sec. 346.63(4), Stats.,[1] a driver is deemed under the influence of an intoxicant if his blood contains 0.10 percent or more by weight of alcohol.

Defendant's argument both at trial and on this appeal is that he was not under the influence of an intoxicant *at the time of arrest* because an insufficient amount of alcohol had been absorbed in his bloodstream to cause him to be under the influence. Expert testimony at trial revealed that, although alcohol absorption rates vary, generally 30 to 45 percent of the alcohol is absorbed within the first 15 minutes, 60 percent is absorbed within the first 30 minutes, and 90 percent is absorbed within the first hour.[2] The state's expert witness Aldo Trameri

---

[1] Sec. 346.63, Stats., provides:

"**346.63 Operating under influence of intoxicant. (1)** No person may drive or operate a motor vehicle while under the influence of an intoxicant or a controlled substance.

"(2) It is unlawful for any person to cause injury to another person by the negligent operation of a vehicle while under the influence of an intoxicant. No person shall be convicted under this subsection except upon proof of causal negligence in addition to such operation while under the influence of an intoxicant.

"(3) In this section:

"(a) 'Drive' means the exercise of physical control over the speed and direction of a motor vehicle while it is in motion.

"(b) 'Operate' means the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion.

"(4) A person whose blood contains 0.1% or more by weight of alcohol is under the influence of an intoxicant for purposes of this section. Notwithstanding s. 885.235(1)(c), a chemical analysis of a person's blood, breath or urine which has been admitted into evidence and which shows that there was 0.1% or more by weight of alcohol in the person's blood is sufficient evidence, without corroborating physical evidence, on which to base a finding that the person's blood contained 0.1% or more by weight of alcohol."

[2] The state called Aldo Trameri, a chemist for the Wisconsin Department of Transportation, whose expert testimony revealed the following:

testified that, based upon the fact that the defendant was observed operating a motor vehicle at 5:10 p.m. and a test result of 0.13 plus percent was obtained at 5:46 p.m., in his opinion defendant respondent would have had alcohol in his system at the time he was driving. Trameri was unable to state what the defendant's blood alcohol level would have been at the time of driving without additional facts. On cross-examination, Trameri agreed that the time at which the alcohol was consumed would affect the defendant's blood alcohol level at the time he

"*Q.* I would direct you now to the test result which appears on line 15 and to which Officer Bruns has testified. What is that reading? *A.* That's thirteen hundredths of one percent blood alcohol.

"*Q.* And at what time was that reading obtained?

"*A.* At 5:46 p.m.

"*Q.* Based on your own experience and training and considering the tests which you have performed involving blood alcohol level samples, do you have an opinion concerning Mr. Vick's status at the time he took the test?

"*A.* Yes I would.

"*Q.* And what would that be?

"*A.* That he would be under the influence of alcohol definitely.

"*Q.* Can you describe for the Court and Jury something about the absorption rate concerning alcohol?

"*A.* That varies with the food in the stomach, the type of beverage, but generally you would expect about 60 percent of the alcohol to be absorbed within the first half hour and 90 percent within the next hour.

". . . .

"*Q.* Now if I understand your earlier testimony, you indicated that 60 percent of the alcohol would be absorbed within 30 minutes of consumption, is that correct?

"*A.* Yes.

"*Q.* And this would be on a continuing basis so that if a man had one drink and then 15 minutes later had another one, the process would be going on for both of them so that the first one would be 60 percent absorbed a half hour later, and then the second one would be 60 percent absorbed maybe 45 minutes later?

"*A.* Yes, it's as you state.

"*Q.* It's a continuing thing? *A.* Yes.

was stopped. Defendant maintains that he was arrested approximately 15 minutes after leaving Woods Tavern, and he suggests that only a portion of his first drink and a much smaller portion of the second drink had been absorbed at the time of his arrest. Defendant asserts that, as he only lived about $5\frac{1}{2}$ miles from Woods Tavern, he would have arrived home before sufficient alcohol had been absorbed into his system to register 0.10 percent.

In considering the defendant's credibility, the jury could have recognized that the defendant's denial of the consumption of alcoholic beverages in excess of two, $\frac{7}{8}$ ounce brandy and sours, in contradiction of Walter's testimony concerning defendant's admission at the time of the arrest, was suspect. Trameri's testimony, in response to a hypothetical question, revealed that a 220 to 230 pound man would have to consume approximately 10 ounces of 100 proof liquor in order to reach a blood-alcohol level of 0.13 percent.

After rejecting jury instructions fashioned by both the prosecution and the defense, the trial court instructed the jury in part as follows:

"Evidence has been received that, within two hours after defendant's alleged operation of a vehicle, a sample of his breath was taken, and evidence of an analysis of such breath sample has also been received. The law provides that the presence of ten hundredths of one percent or more, by weight, of alcohol in a person's blood, is a

"Q. You indicated also that within one hour how much would the rate of absorption be?
"A. 90 percent.
"Q. 90 percent within an hour?
"A. Yes.
"Q. Can you tell me with any degree of chemical certainty what the approximate amount would be absorbed within 15 minutes?
"A. 30 percent, 45 percent."

*See also:* C. Muehlberger, *The Physiological Action of Alcohol,* 167 J.A.M.A. 1842 (1958).

sufficient basis for finding that a person was under the influence of an intoxicant. Therefore, if you are satisfied beyond a reasonable doubt that, within two hours after the alleged operation of a vehicle, the defendant did have ten hundredths of one percent or more, by weight, of alcohol in his blood, then you may, on this evidence alone, find that he was under the influence of an intoxicant. But, you should so find only if you are satisfied beyond a reasonable doubt from all the evidence in this case, that the defendant, at the time of the alleged operation of a vehicle, was under the influence of an intoxicant as defined by these Instructions.

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant was operating a motor vehicle while under the influence of an intoxicant, then you should find the defendant guilty.

"If, however, you are not so satisfied, then you must find the defendant not guilty."

The trial court proceeded to instruct the jury to scrutinize all of the evidence in reaching its determination. The jury was instructed on the presumption of innocence, the state's duty to prove every element of a crime beyond a reasonable doubt, and the jury's duty to accord evidence such weight as it deserved and to draw its own conclusions and inferences from the evidence presented.

Defendant argues that the jury instruction created an unconstitutional presumption that, if defendant were under the influence of an intoxicant at the time of the breathalyzer test, he was also under the influence at the time he was driving.

The court of appeals drew the following conclusion:

"At best, the instruction is ambiguous. It informed the jury that the existence of a blood alcohol level of 0.10 percent or more is a sufficient basis for finding that defendant was under the influence of alcohol. It then stated that if the jury was satisfied that defendant had 0.10 percent or more of alcohol in his body within two hours after operation of the vehicle, it might, on that evidence alone, find that he was under the influence of

an intoxicant. Thus, the instruction created a presumption that defendant was under the influence of an intoxicant if his blood alcohol level was 0.10 percent or more. The jury was allowed to find the presumed fact of intoxication from the proved fact of defendant's blood alcohol level. The instruction did not state, however, *when* the jury could find that defendant was under the influence of an intoxicant—at the time of the test or at the time of the operation of the vehicle."[3]

This case calls upon us to determine whether the trial court's instruction on the use of the breathalyzer test set forth an unconstitutional presumption that (1) if it were proven defendant was under the influence of an intoxicant at the time of testing, that (2) then he was under the influence of an intoxicant at the time he was operating his vehicle. We hold that it does not.

The state contends that the court of appeals erred in concluding that the jury instruction was unconstitutional because the instruction set forth only an inference which the jury could draw from the evidence and not a mandatory presumption which the jury had to accept. The state contends the test to be applied in determining the con-

---

[3] The court of appeals continued reasoning:

"It is not likely that the jury believed the court was referring to defendant's intoxication at the time of the test, since it was instructed that it could find defendant guilty only if it found he was intoxicated while operating his vehicle. It was not instructed what relationship, if any, defendant's intoxication at the time of the test would have on proof of that element. This failure to differentiate between time of testing and time of driving may well have caused the jury to assume that if the evidence established that defendant was intoxicated when he took the test, that evidence was also sufficient to establish that he was intoxicated when driving. The phrase 'within two hours after the alleged operation of a vehicle' could also have caused the jury to believe or have bolstered the belief that evidence showing a blood alcohol level of 0.10 percent or more at any time within two hours of operation of the vehicle was sufficient evidence for finding that defendant was intoxicated at the time he drove his car."

stitionality of permissive inferences was established in *Ulster County Court v. Allen,* 442 U.S. 140 (1979) (court upheld statute providing that the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all persons in the automobile). Under the *Allen* test, a permissive presumption is proper if the jury could rationally draw the allowed inference based on the facts before it. There is a " 'rational connection' " between the basic facts which the state has proven and the ultimate fact to be presumed if the latter is " 'more likely than not to flow from' " the former. *Id.* at 165. "Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *Id.* at 157.

The state alleges that the court of appeals correctly found the instruction created a permissive presumption and then incorrectly applied the test to be used when reviewing a mandatory presumption. "A mandatory presumption is a . . . troublesome evidentiary device. For it may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden; it tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts. In this situation, the Court has generally examined the presumption on its face to determine the extent to which the basic and elemental facts coincide." *Id.* at 157–58 (citations omitted) (emphasis in original). In analyzing a mandatory presumption, the Supreme Court has held that it is irrelevant that there may be ample evidence in the record other than the presumption to support a con-

viction. *Id.* at 160. The state argues that the court of appeals in the instant case analyzed the presumption on its face as if it were a mandatory presumption and not a permissive inference.

Arguing that the instruction contained only a permissive inference, the state contends that under the facts presented in this case—the description of the defendant's driving, his slurred speech and uncooperative attitude, the strong odor of alcohol, and defendant's having failed the field sobriety test—it was rational for the jury to find that the defendant was driving while under the influence of an intoxicant. To take this a step further, the state argues that the inference set forth by the instruction (that if defendant were intoxicated at the time of testing, that he was intoxicated at the time of his initial arrest) is rational as applied to all the facts of the case. Lastly, the state contends that any error contained in the instruction was harmless error under the test established in *Claybrooks v. State,* 50 Wis. 2d 79, 86, 183 N.W.2d 139 (1971) : "[I]t cannot reasonably be said that had such error not been committed, the verdict might probably have been different."

Defendant contends that the jury instruction given regarding the breathalyzer test was unconstitutional because if failed to separate a finding of intoxication at the time of the test from a finding of intoxication at the time of operation of a motor vehicle. Defendant argues that the court of appeals never determined whether the challenged instruction set forth a mandatory or permissive presumption. The defendant submits that, because the jury was not instructed that it could reject the presumption, the *Allen* test which looks to the facts of the case, cannot be applied. Defendant urges us to find *Sandstrom v. Montana,* 442 U.S. 510 (1979), controlling. In *Sandstrom* the United States Supreme Court held that because a jury may have interpreted the challenged pre-

sumption as conclusive or as shifting the burden of persuasion, this rendered the instruction unconstitutional as it violated the Fourteenth Amendment's requirement that the state prove every element of a crime beyond a reasonable doubt.

Defendant in his brief concludes that the instruction is unconstitutional on either of two grounds: If the instruction is construed as a conclusive presumption, it should fail because "it does not allow the jury to find intoxication at the time of the test and forces the jury to draw a conclusion that if the defendant is intoxicated at any time, it must be at the time of operation" of the vehicle. In the alternative, if the presumption is viewed as a permissive inference, it is unconstitutional because the instruction did "not explain to the jurors that they might reject the presumption."

Defendant relies upon *Werner v. State,* 66 Wis. 2d 736, 226 N.W.2d 402 (1975), as authority for his contention that any error in the instruction in this case was not harmless because the instruction went to the heart of the defendant's defense.

We note at the outset that a trial judge may exercise wide discretion in issuing jury instructions based on the facts and circumstances of the case. *State v. Pruitt,* 95 Wis. 2d 69, 80–81, 289 N.W.2d 343 (Ct. App. 1980) (no error to refuse special instructions even when they are not erroneous). This discretion extends to both choice of language and emphasis. *State v. Dix,* 86 Wis. 2d 474, 273 N.W.2d 250 (1979). A trial judge should exercise discretion in order "to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." *Id.* at 486. Furthermore, "[u]ltimate resolution of the issue of the appropriateness of giving particular instruction turns on a case-by-case review of the evidence, with each case

necessarily standing on its own factual ground." *Johnson v. State*, 85 Wis. 2d 22, 28, 270 N.W.2d 153 (1978).

■

We note that there is a strong interest in orderly trial procedure and preserving the finality of judgments. *Schneckloth v. Bustamonte*, 412 U.S. 218, 256 (1973) (Powell, J., concurring). Accordingly, in reviewing challenges to jury instructions, it is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973). *Accord, Ross v. Israel*, 503 F. Supp. 131, 133 (E.D. Wis. 1980) ; *Boyd v. United States*, 271 U.S. 104, 107 (1926).

"While this does not mean that an instruction by itself may never rise to the level of *constitutional* error, see *Cool v. United States*, 409 U.S. 100 (1972), it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Cupp v. Naughten*, 414 U.S. at 147.

■

The United States Supreme Court has stated that the burden of demonstrating that an erroneous instruction was so prejudicial that it will be held unconstitutional is even greater than the showing required to establish plain error on direct appeal. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In assessing whether an alleged erroneous jury instruction has reached this magnitude, the inquiry is not whether " 'the instruction is undesirable, erroneous, or even "universally condemned," ' " but rather the question is " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Henderson, supra* at 154

(*quoting Cupp v. Naughten,* 414 U.S. at 146, 147). While we may view the challenged jury instruction in isolation in the instant case as "undesirable," we do not view the jury instructions in totality as rendering defendant's conviction constitutionally invalid.

In our recent decision, *State v. Burkman,* 96 Wis. 2d 630, 292 N.W.2d 641 (1980), we concluded that the crime of operating a motor vehicle while under the influence of an intoxicant had two elements: "(1) that the defendant was driving or operating a motor vehicle; and (2) that the defendant was under the influence of an intoxicant *at the time* that he was driving or operating the motor vehicle." *Id.* at 644 (emphasis added).

Defendant in the instant case challenges two specific sentences in the jury instruction and alleges that they create an unconstitutional presumption that if defendant were intoxicated at the time of testing, then he was intoxicated at the time of arrest. The challenged portion of the jury instruction reads as follows:

"[I]f you are satisfied beyond a reasonable doubt that, within two hours after the alleged operation of a vehicle, the defendant did have ten hundredths of one percent or more, by weight, of alcohol in his blood, then you may, on this evidence alone, find that he was under the influence of an intoxicant. But, you should so find only if you are satisfied beyond a reasonable doubt from all the evidence in this case, that the defendant, at the time of the alleged operation of a vehicle, was under the influence of an intoxicant as defined by these Instructions."

Defendant asserts that this instruction allows the state to escape its burden of proof as to the second element of the crime. *See Muller v. State,* 94 Wis. 2d 450, 473, 289 N.W.2d 570 (1980); *In Re Winship,* 397 U.S. 358, 364 (1970).

Much analysis is undertaken in the parties' briefs before this court as to what type of presumption this jury instruction creates and, hence, what test should be ap-

plied. As was recently noted by this court in a dissenting opinion, the " 'presumption is the slipperiest member of the family of legal terms, except its first cousin, "burden of proof," ' " and "the law uses the word 'presumption' in many different ways." *Muller v. State,* 94 Wis. 2d at 483 (Abrahamson, J., dissenting).

We have recently attempted to define the various classes and subclasses of presumptions:

"The Supreme Court has identified two types of presumptions: permissive presumptions and mandatory presumptions. A permissive presumption, or permissive inference, allows, but does not require, the trier of fact to find an element of the crime (elemental fact) upon proof by the prosecution of another fact (basic fact), and it places no burden of any kind on the defendant. *Ulster County Court v. Allen,* 442 U.S. 140, 99 S. Ct. 2213, 2224, 60 L. Ed. 2d 777, 792 (1979). A permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof. *Allen, supra,* at 157, 99 S. Ct. at 2224, 60 L. Ed. 2d at 792. A permissive presumption does not violate due process of law.

"A mandatory presumption requires that the trier of fact *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with *some* evidence to rebut the presumption. *Allen, supra,* at 157, 99 S. Ct. 2224, 2225, 60 L. Ed. 2d at 792.

"A mandatory presumption which is irrebuttable is a conclusive presumption. *See: Morissette v. United States,* 342 U.S. 246 (1952) ; *United States v. United States Gypsum Co.,* 438 U.S. 422 (1978). A conclusive presumption is an irrebuttable direction by the trial court to find the elemental fact once the jury is convinced of the basic facts triggering the presumption. *Sandstrom, supra,* at 523, 99 S. Ct. at 2456, 61 L. Ed. 2d at 46, 47. A mandatory presumption may also be rebuttable, that is, it requires the trier of fact, if satisfied as to the basic facts which trigger the presumption, to find the elemental fact *unless* the defendant offered evidence to the contrary. *Sandstrom, supra,* at 515, 99 S. Ct. at 2455, 61 L. Ed. 2d at 45.

"The *Sandstrom* court rejected both conclusive presumptions and rebuttable presumptions which shift the burden of persuasion to the defendant:
"....

"*Sandstrom* divided rebuttable presumptions into two kinds: (1) those that shift the *burden of persuasion* to the defendant or require him to come forward with a quantum of proof which is greater than *some,* and (2) those that place upon the defendant a *burden of production,* or require him to come forward with *some* evidence in rebuttal. The court also held that a rebuttable presumption which requires the defendant to produce some contrary evidence in rebuttal is constitutionally permissible, as long as no reasonable juror could interpret the presumption as shifting the burden of persuasion. In *Allen, supra,* at 157, 99 S. Ct. at 2225, *n.* 16, 61 L. Ed. 2d at 792, *n.* 16, the court held that to the extent that a presumption imposes an extremely low burden of production, that is, being satisfied by "any evidence," it may well be that its impact is no greater than that of a permissive inference and it may be properly analyzed as such."

*Muller v. State,* 94 Wis. 2d at 475–77. *See* Note, *After Sandstrom: The Constitutionality of Presumptions that Shift the Burden of Production,* 1981 Wis. L. Rev. 519, 519 n. 1.

We interpret the jury instruction in the instant case as stating a permissive inference or presumption. No reasonable juror would believe that he must, as a matter of law, find that defendant was intoxicated while operating his vehicle if the juror found defendant had a certain blood alcohol level at the time of testing. The word "presume" was not used in the instruction. Rather, the word "may" was used which is clearly construed as permissive. We would contrast this with the word "shall" which is generally construed as mandatory. *State v. Camara,* 28 Wis. 2d 365, 371, 137 N.W.2d 1 (1965). *See also:* 66 Op. Atty. Gen. 248 (1977). As the Supreme Court has stated in *Ulster County Court v. Allen,* 442 U.S. at 157: A permissive presumption allows, but does not require, the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no

burden of any kind on the defendant. The *Allen* court set out the following test by which to interpret the constitutionality of a permissive presumption: "When reviewing this type of device, the court has required the party challenging it to demonstrate its invalidity as applied to him. . . . Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is *no rational way* the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." *Id.* at 157 (citations omitted) (emphasis added).

In determining whether there is a "rational connection" between the basic fact that the prosecution proved and the ultimate fact presumed, the test is whether it can be said with substantial assurance that the latter is " 'more likely than not to flow from' the former." *Ulster County Court v. Allen,* 442 U.S. at 165. *Accord, Leary v. United States,* 395 U.S. 6, 36 (1969). The issue in the instant case is whether the presumed fact that defendant was under the influence of an intoxicant at the time of driving "more likely than not" flows from the proven fact of intoxication at time of testing. The trial judge was satisfied, under all the evidence before him, that this test was met. We conclude that he did not abuse his discretion in issuing the jury instruction.

We view the evidence in its entirety in the instant case. The state introduced evidence which, although refuted by the defendant, demonstrated: (1) Defendant told a police officer that he had been drinking earlier in

the afternoon; (2) Defendant failed a field sobriety test at the time of arrest; (3) Defendant had been driving erratically; (4) Defendant was uncooperative at the time of arrest; (5) Defendant possessed an odor of alcohol; (6) Defendant admitted having two drinks shortly before his arrest; (7) Defendant's speech was slurred; (8) Defendant had a blood alcohol level in excess of 0.13 percent at the time of testing, some 36 minutes after his arrest. Defendant introduced evidence to account for the above which the jury was free to accept or reject. Indeed, our review of the lengthy transcript of the trial proceedings leaves us with no doubt that the defendant had amply set forward his theory of the case: namely, even though defendant may have been intoxicated at the time of testing, he was not intoxicated at the time of arrest. The jury was apprised of expert testimony to the effect that the expert could not state from the breathalyzer test results what defendant's blood alcohol level would have been at the time of defendant's arrest. We believe it entirely rational that a reasonable jury could have drawn the permissive inference from all the facts before it that it was more likely than not that if defendant were intoxicated at the time of testing, that he was intoxicated at the time of arrest. Our review of the trial court's exercise of discretion in giving the jury instructions in this case has led us to the conclusion that they are not constitutionally infirm.

We would distinguish the instant case from the recent decision in *Sandstrom v. Montana, supra,* the most definitive Supreme Court word on presumptions to date. The instruction at issue in *Sandstrom* was " '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' " 442 U.S. at 515. The basic tenet in *Sandstrom* is that constitutional determinations as to the nature of a presumption in a jury instruction are based "upon the way in which a reasonable juror

could have interpreted the instruction." *Id.* at 514. The defendant, using the *Sandstrom* rationale, argues that if a reasonable juror could have believed he was *required* to apply a presumption, then it could not be characterized as permissive. *Sandstrom* implies that the only way to escape this conclusion is to qualify every instruction dealing with a permissive inference with language to the effect that the jury *has a choice* in accepting *or* rejecting the presumption. *Id.* at 515.

At issue are two sentences (roughly one-third of the way into the instructions) out of approximately eighty-four sentences comprising the jury instructions given in the case at bar.[4] While we may question, in the total scheme of things, whether the jury was so attentively attuned to these two sentences to have accorded them the determinative status in the controversy that defendant advances, we conclude they pass the stringent *Sandstrom* test of constitutional muster. First, the language "then you may, on this evidence alone [breathalyzer test results], find that [defendant] was under the influence of an intoxicant," is clearly permissive. Second, the language is qualified by the immediately succeeding sentence, detailing: "But, you should so find only if you are satisfied beyond a reasonable doubt from all the evidence in this case, that the defendant, at the time of the alleged operation of a vehicle, was under the influence of an intoxicant as defined by these Instructions."[5]

[4] We quote the wise words of Mr. Justice Rehnquist in his concurring opinion in *Sandstrom:* "I am loath to see this Court go into the business of parsing jury instructions given by state trial courts, for as we have consistently recognized, 'a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Sandstrom v. Montana,* 442 U.S. 510, 527 (1979) (Rehnquist, J., concurring).

[5] Other succeeding instructions read as follows:

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant was operating a motor vehicle while

The court in *Sandstrom* found the instruction unconstitutional because the "jury was told that *'the law presumes* that a person intends the ordinary consequences of his voluntary acts.' They were not told that the presumption could be rebutted . . . . Given the common definition of 'presume' as 'to suppose to be true without

under the influence of an intoxicant, then you should find the defendant guilty."

". . .

"In determining the guilt or innocence of the defendant, you should scrutinize the evidence with the utmost care and caution. You should act with all the judgment, reason, prudence, and discrimination you possess. If, after this scrutiny of all the evidence, you have a reasonable doubt of the defendant's guilt, you must find him not guilty.

"The law presumes every person charged with the commission of an offense to be innocent. This presumption attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence.

"The burden of proving the defendant guilty of every element of the crime charged is upon the State. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.

". . .

"The term 'reasonable doubt' means a doubt based upon reason and common sense. It is a doubt for which a reason can be given, arising from a fair and rational consideration of the evidence or want of evidence. It means such a doubt as would cause a man of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life.

". . .

". . . In determining the weight to be given to the opinion of experts, you should consider the qualifications and credibility of the expert, whether the opinions are based upon established facts or conceded facts in the case, and the reasons given for the opinions. Such evidence is competent, and it is admitted for the purpose of aiding you in arriving at a conclusion, if it does aid you. You are not bound by the opinions of any expert. You should consider all of the evidence in the case, and you should consider carefully the opinion evidence with all the other evidence in the case, giving to it just such weight as you deem it is entitled to receive."

proof,' . . . and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways." 442 U.S. at 517 (emphasis in original). In the case before us, the use of the permissive word "may," coupled with the immediate qualifying instruction, "you should so find only if," as well as subsequent qualifying instructions distinguish our case from the constitutional infirmities found in *Sandstrom*.

The court of appeals in the instant case found the jury instruction ambiguous because it did not state *when* the jury could find that the defendant was under the influence of an intoxicant, at the time of testing or at the time of the operation of the vehicle. While the challenged instruction may not have been artfully drafted, almost any instruction may be subject to criticism, and though this instruction is no exception, we do not construe it as running afoul of constitutional mandates.

We conclude, upon examination of the entire record in this case, that the jurors could have rationally inferred that the defendant, who had a blood alcohol level of 0.13 plus percent at the time of testing, was under the influence of an intoxicant at the time of operation of his vehicle. Under the test for a permissive inference established in *Ulster County Court v. Allen, supra,* we uphold the trial court's discretion in concluding that the inferred fact of driving while intoxicated flows more likely than not from the proven fact of the breathalyzer results based upon all the evidence presented in the case. Furthermore, the qualifying instruction regarding the legal effect of the presumption ("But, you should so find only if . . .") was sufficient to overcome any *Sandstrom* infirmities.

*By the Court.*—The decision of the court of appeals is reversed, and the judgment of the trial court is reinstated.