STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert Steven ZELENKA, Defendant-Appellant-Petitioner

Ronald Scott SCHILLING and Thomas Daniel Stanton, Defendants.

Supreme Court

*No. 84–224. Argued February 11, 1986.—Decided May 8, 1986.*

(Also reported in 387 N.W.2d 55.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Jack E. Schairer,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BABLITCH, J.   Robert Steven Zelenka (Zelenka) appeals. Zelenka was convicted of party to the crime of first-degree murder, pursuant to sec. 939.05, Stats. He contends that two of the jury instructions at his trial violated his right to due process. We conclude that neither instruction confused the jury or affected the verdict. Accordingly, we affirm.

In December, 1975, a jury for the circuit court of Dane county convicted Zelenka as party to the crimes of first-degree murder and armed robbery, in violation of secs. 940.01(1), 943.32(1)(a) and (2) and 939.05, Stats., for his role in the killing and robbery of Michael Posthuma in June, 1975. Zelenka appealed his conviction to this court, which affirmed it. *Zelenka v. State,* 83 Wis. 2d 601, 266 N.W.2d 279 (1978).

37

Zelenka then sought habeas corpus relief in federal court. In December, 1981, the federal court dismissed his claim, ruling that he had failed to exhaust available state court remedies. On Zelenka's appeal, the federal court of appeals also held that he had failed to exhaust available state remedies. *Zelenka v. Israel,* 699 F.2d 421, 424 (7th Cir. 1983).

Subsequently, Zelenka moved the circuit court for postconviction relief, pursuant to sec. 974.06, Stats., and the court denied the motion. On appeal of the denial, the court of appeals affirmed. Zelenka then petitioned this court for review, which we granted.

According to Zelenka's testimony at trial, Zelenka and two other men, Thomas Stanton and Ronald Schilling, met with Posthuma on June 9, 1975, in Madison in order to arrange to sell him a quarter-ton of marijuana. At that meeting Stanton and Schilling told Zelenka, in Posthuma's absence, that they planned to "rip-off" Posthuma—that is, to take $2100 in cash which Posthuma had brought to buy the marijuana. They told Zelenka that he should "hit" Posthuma. According to Zelenka, he understood "hit" to mean "strike" and he refused to do so. He did agree to help "set up" the robbery. To "set-up" the robbery, Zelenka discussed aspects of the drug deal with Posthuma, such as whether a van which Posthuma had borrowed was large enough to hold such an amount of marijuana.

Later that day the four men left Madison in the van, with Zelenka driving. Posthuma sat on the rear floor of the van with Stanton nearby on a lawn chair. Schilling sat in the front passenger's seat. At some point during the drive someone persuaded Posthuma to wear a blindfold to prevent his learning exactly where the sale would occur. According to Zelenka,

Stanton told him to stop the van along a remote rural road, which he did. Zelenka heard a "thud" behind him at about the same time. Then Zelenka saw Stanton hit Posthuma in the head with a hammer several times and Schilling hit him with a pipe and repeatedly stab him with a long knife.

At trial Zelenka claimed that he did not attack Posthuma and that he tried twice to stop Schilling's knife attack by shoving Schilling away from Posthuma. He also testified that Stanton and Schilling dragged Posthuma into a nearby woods to a spot where Posthuma eventually bled to death, but that he did not help them.

After leaving Posthuma in the woods, Zelenka, Stanton and Schilling tried to clean Posthuma's blood from parts of the van. When they returned to Madison, they abandoned the van in a shopping center parking lot, after trying to wipe it clean of fingerprints. In the parking lot Schilling gave Zelenka $1000, telling him that the money was to keep him "shut up."

Zelenka also testified that, when he learned that someone had discovered Posthuma's body, he made a statement to police partly in order to learn whether Schilling was in custody. He stated that, having seen Schilling stab Posthuma, he feared that Schilling might deal similarly with him.

The State of Wisconsin (State) charged Zelenka as party to the crimes of first-degree murder and armed robbery. Section 939.05, Stats., reads as follows:

> **"939.05 Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly

committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

" (2)　A person is concerned in the commission of the crime if he:

" (a)　Directly commits the crime; or

" (b)　Intentionally aids and abets the commission of it; or

" (c)　Is a party to a conspiracy with another to commit it. . . . Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others to withdraw."

At Zelenka's trial police officers who had questioned Schilling testified to the effect that Schilling's version of events leading to Posthuma's death did not contradict Zelenka's testimony regarding his own actions, except that Schilling claimed that Zelenka had helped drag Posthuma into the woods. The officers also testified that Schilling claimed that he had stabbed Posthuma in order to make the crime look like "something else" after Stanton had hit Posthuma with a hammer.

At the jury instructions conference prior to final arguments Zelenka stated on the record that he had no objection to any proposed instruction. Following

closing arguments, the court instructed the jury at considerable length.

After instructing the jury on the elements of the underlying crime of armed robbery, the court instructed the jury on the elements of the underlying crime of first-degree murder.

> "First degree nurder (sic), as defined in section 940.01 of the Criminal Code of Wisconsin, is committed by one who causes the death of another human being with intent to kill that person or another.
>
> "Before *the defendant* may be found guilty of murder in the first degree, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following two elements of this offense:
>
> "First, that *the defendant* intended to kill Michael Posthuma.
>
> "Second, that *the defendant* caused the death of Michael Posthuma." (Emphasis added.)[1]

Zelenka challenges this instruction, on the theory that because there was no basis to submit the case on a theory of direct committer's liability, this instruction violated due process.

---

[1] Later the court read this related instruction:

"If you are satisfied beyond a reasonable doubt from the evidence in this case that *the defendant* did commit an act of stabbing which caused the death of Michael Posthuma at the time and place charged in the information, and that at any time before doing such act *the defendant* had formed in his mind the purpose to take the life of Michael Posthuma, and that of (sic) the act of stabbing was done by *the defendant* in pursuance of such mental purpose, then you should find *the defendant* guilty of murder in the first degree as charged in the information." (Emphasis added.)

The court also instructed the jury as follows, reading a portion of the then-standard instruction on first-degree murder where the cause of death is not in issue, Wisconsin Jury Instruction—Criminal 1100:

> "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts.[2] If one person assaults another violently with a dangerous weapon likely to kill, and the person thus assaulted dies therefrom, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended."

Zelenka challenges this instruction on the theory that the presumption which it contains violates due process.

The court then instructed the jury on the elements of party to a crime, as delineated in sec. 939.05, Stats. It told the jury that sec. 939.05 ". . . provides that whoever is concerned in the commission of a crime may be charged with and convicted of the commission of the crime although he did not directly commit it." The court instructed the jury on the elements of the crime "as applicable in this case." It set forth the elements of aiding and abetting in the commission of a crime, in violation of sec. 939.05(2)(b) and of "conspiring to commit" a crime, in violation of sec. 939.05(2)(c). Most importantly, it did not instruct the jury on the elements of directly committing the crime, in violation of sec. 939.05(2)(a).

---

[2] In 1977 this portion of Criminal 1100 was amended to read: "[y]ou are the sole judges of the facts and you must not find the defendant guilty unless you are satisfied beyond a reasonable doubt that the defendant intended to kill."

With respect to the murder charge, the only verdict which the court submitted to the jury was one which allowed the jury to find Zelenka guilty or not guilty of party to the crime of first-degree murder.

Whether either of the challenged instructions violated Zelenka's right to due process is a question of law. This court must decide questions of law independently without deference to the decision of the trial court. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

Before considering the due process issues, we first address the question of whether Zelenka waived his right to challenge these instructions. The State argues that Zelenka waived his right to challenge the instructions to the jury when he stated at trial that he had no objection to any proposed instruction. The State concedes that this court has discretion to review the instructions, notwithstanding Zelenka's failure to object.

Zelenka concedes that he waived his right to review of the challenged instructions by failing to object, but he asserts that this court should review the alleged errors in the instructions because the errors deprived him of due process.

Section 805.13(3), Stats., requires the circuit court to conduct a conference on proposed jury instructions and sets forth the consequence of a failure to object to an instruction at that conference. It provides:

> "At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written

motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. *Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.*" (Emphasis added.)

This section unambiguously states "[t]he requirement that counsel object to proposed jury instructions at the instruction and verdict conference or be deemed to have waived any error in the proposed instruction . . ."; by virtue of sec. 972.11(1), this requirement applies in criminal cases. *State v. Paulson,* 106 Wis. 2d 96, 101–02, 315 N.W.2d 350 (1982). Failure to timely object to jury instructions is waiver of alleged defects in the instructions. *State v. Cydzik,* 60 Wis. 2d 683, 694, 211 N.W.2d 421 (1973). Accordingly, we conclude that Zelenka waived the right to object to the instructions in this appeal by not objecting at trial.

However, a defendant's waiver of the right to object to jury instructions does not preclude our review of claimed errors in the instructions. We may choose to review challenges to jury instructions which raise federal constitutional questions going to the integrity of the fact-finding process. *See e.g. State v. Gustafson,* 119 Wis. 2d 676, 693, 351 N.W.2d 653 (1984) and *State v. Baldwin,* 101 Wis. 2d 441, 446, 304 N.W.2d 742 (1981). Zelenka asserts that two errors in the instructions at his trial necessarily distorted the fact-finding

process of the jury. We choose to review those assertions.

## I.

Zelenka asserts that the circuit court erred when, in instructing the jury on elements of the underlying crime of first-degree murder, the court referred to "the defendant" rather than to Ronald Schilling. Zelenka emphasizes that the court instructed the jury several times that it could find "the defendant" guilty of murder in the first-degree if convinced that the State had proved the elements of that offense beyond a reasonable doubt.

According to Zelenka, the court's inappropriate references to "the defendant" could have caused the jury to convict him of "directly committing" Posthuma's murder, in violation of sec. 939.05(2)(a), Stats., even though the evidence at trial was insufficient to support his conviction as a direct committer of the murder. Building on his characterization of the effect of the court's references, Zelenka maintains that this court must reverse his conviction because the record does not prove that his conviction was not founded on a theory, such as a violation of sec. 939.05(2)(a), which could not constitutionally support a verdict. Finally, he maintains that the court's error prejudiced the jury's verdict.

The State concedes that Zelenka did not directly commit the murder, and that the instructions should not have required the jury to determine whether "the defendant" caused or intended to cause the death of Posthuma. It also concedes that conviction of Zelenka as party to the crime of first-degree murder depended

on a preliminary finding by the jury that Schilling committed the first-degree murder of Posthuma. Nonetheless, the State contends that the error in the instructions does not constitute a denial of Zelenka's right to due process because it was harmless when viewed in light of all the instructions and the totality of evidence presented at trial.

The complete instructions which the court gave to the jury reveal very clearly what happened. The court read both of the instructions to which Zelenka now objects prior to instructing the jury on the charges against Zelenka. Before a jury can find a defendant guilty of party to the crime of murder, the jury must first determine whether the underlying crime in fact occurred. Here, the underlying crime was murder. All evidence at trial, including Zelenka's own testimony, pointed to Schilling, not Zelenka, as the direct committer of the underlying crime of murder. When the court instructed the jury on the elements of the underlying crime, it erroneously used the word "defendant" instead of Schilling. Our task is to determine whether any reasonable possibility exists that the erroneous use of the word "defendant", indicating Zelenka, confused the jury.

■

The scope of Zelenka's right to due process is undisputed. The due process clause of the fourteenth amendment to the federal Constitution protects the accused in a criminal trial against conviction ". . . except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). Accordingly, a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process. *Jackson*

*v. Virginia,* 443 U.S. 307, 314 (1979). Further, a conviction based on insufficient evidence violates the right to due process. *Id.* at 324.

In this case Zelenka defended against the charge that he was a party to the crime of first-degree murder. Charging a person as a party to a crime is a way of establishing criminal liability separate from proving the elements of the offense to which the defendant is charged as a party. *State v. Horenberger,* 119 Wis. 2d 237, 243, 349 N.W.2d 692 (1984). Proof of the acts which can support liability as a party to a crime is separate from proof of the underlying criminal act. *Horenberger* at 243. In Wisconsin there is no requirement that an aider and abettor share the specific intent required for commission of the substantive offense he aids and abets. *State v. Sharlow,* 110 Wis. 2d 226, 238, 327 N.W.2d 692 (1983); *Roehl v. State,* 77 Wis. 2d 398, 407–08, 253 N.W.2d 210 (1977). The prosecution need not charge a defendant as a principal under sec. 939.05, Stats., nor specify that a defendant is charged under a specific subsection of the section. *State v. Shears,* 68 Wis. 2d 217, 239–40, 229 N.W.2d 103 (1975); *Cydzik* at 687–88. The prosecution must prove that the defendant committed the offense of party to a crime but it may do so without convicting other participants or establishing the identity of the principal. *Shears* at 240. Finally, a jury may convict a defendant as party to a crime without unanimously agreeing on the manner in which the defendant participated in the commission of the underlying offense, whether by directly committing the offense, by aiding and abetting in its commission or by conspiring with another to commit the of-

fense. *May v. State,* 97 Wis. 2d 175, 192, 293 N.W.2d 478 (1980).[3]

The court's reference to "the defendant" in its instructions was erroneous. When it is clear that an error has been committed, we must be sure that the error did not work an injustice. We have previously held that the only reasonable test to assure this result is to hold that, where error is present, the reviewing court must set aside the verdict unless it is sure that the error did not influence the jury or had such slight effect as to be *de minimis. State v. Dyess,* 124 Wis. 2d 525, 541–42, 370 N.W.2d 222 (1984). Where the error affects rights of constitutional dimension or when the verdict is only weakly supported by the record, the reviewing court's confidence in the reliability of the proceeding may be undermined more easily than when the error was peripheral or the verdict strongly supported by evidence untainted by error. *Id.* at 545. When this court assesses harmless versus prejudicial error, the test is ". . . whether there is a reasonable possibility that the error contributed to the conviction. If it did, reversal and a new trial must result." *Id.* at 543.

---

[3] To prove that a defendant aided and abetted the commission of a crime, the State must prove that a person (1) undertook conduct (either verbal or overt action) which as a matter of objective facts aids another person in the execution of a crime and (2) he consciously desires or intends that his conduct will give such assistance. To prove conspiracy, the State must prove that (1) an agreement exists between two or more persons to direct their conduct toward the realization of a criminal objective and (2) that each member of the conspiracy individually consciously intends the realization of a part or criminal objective. *May* at 184–85.

48

In reviewing challenges to jury instructions, we do not view a single instruction to a jury in artificial isolation. *State v. Vick,* 104 Wis. 2d 678, 691, 312 N.W.2d 489 (1981). Instead, we recognize that

> " '. . . a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.' " *Id.* at 691, citing *Cupp v. Naughten,* 414 U.S. 141, 147 (1973).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will be held unconstitutional is even greater than the showing required to establish plain error on appeal. *Id.*

Accordingly, we analyze the record in Zelenka's case in order to determine whether there was a "reasonable possibility" that the court's erroneous reference to "the defendant" in this instruction contributed to Zelenka's conviction. To make this determination, we do not view this instruction in isolation from the trial nor do we consider whether such an instruction could prejudice the verdict in some hypothetical trial. We view this instruction in the context of the entire trial.

During ten days of trial, the jury heard evidence, including the testimony of Zelenka, that Zelenka, Stan-

ton and Schilling planned to rob Posthuma on June 9, 1975; that Zelenka helped persuade Posthuma that a drug deal would occur that evening; that Zelenka drove Posthuma, Stanton and Schilling to a remote rural area, in order that the three men could rob Posthuma; that Zelenka stopped the van for a period of time in which Stanton and Schilling repeatedly attacked Posthuma with weapons; that Zelenka did not attack Posthuma; that all three men took various actions to destroy evidence of the attack; and that Zelenka benefitted from his participation in the events of the evening by receiving and using proceeds from the robbery.

Following the presentation of the evidence and final arguments, the court instructed the jury, reading 24 pages of instructions to the jury. With respect to party to a crime, the court instructed the jury on the elements of aiding and abetting in the commission of a crime, in violation of sec. 939.05(2)(b), Stats., and of "conspiring to commit" a crime, in violation of sec. 939.05(2)(c). It did not instruct the jury on the elements of directly committing the crime, in violation of sec. 939.05(2)(a). The court then submitted two verdict forms to the jury, asking it to determine separately whether Zelenka was guilty of party to first-degree murder and whether he was guilty of party to armed robbery. The court did not give the jury the choice of finding Zelenka guilty of first-degree murder in violation of sec. 940.01.

Because the challenged instructions occurred in the course of the prosecution of Zelenka as party to a crime, our analysis necessarily centers on the question of whether the faulty reference in the instructions could have affected the jury's finding on the underlying

crime and, therefore, prejudiced the verdict. Our analysis recognizes significant facts which distinguish this case from hypothetical cases in which such an erroneous reference might have had a different effect on the jury verdict. One key fact is that the State did not prosecute Zelenka as a direct committer of the murder of Posthuma. It prosecuted him only under sec. 939.05(2)(b) and (c), Stats. Another is that Zelenka conceded that Schilling caused and intended to cause the death of Posthuma. Schilling's intent to kill was not a disputed issue of fact. A third is that the State presented evidence that Schilling attacked Posthuma and intended to kill him, but produced no evidence that Zelenka attacked Posthuma in any way or intended to kill him.

Reading this record in its entirely unquestionably supports the conclusion that the jury could not have understood that before it could find Zelenka guilty of party to the crime of murder, it had to first find that Zelenka directly committed the murder. In the context of the entire case, the jury simply could not have understood that to be its obligation. In the context of the entire case, the jury had to have known that its task was, first, to determine whether Schilling had committed first-degree murder, and if so, then secondly, to determine whether Zelenka was a party to that crime. All the evidence, including Zelenka's testimony, indicated that Stanton and Schilling intended to cause Posthuma's death and did cause his death. Further, the court's instructions on the elements of party to a crime correctly omitted any reference to Zelenka's culpability as a direct actor in the crime.

Having considered this erroneous instruction in context with the other instructions, the verdict and the evidence, we conclude that it is not reasonably possible that the court's erroneous reference in the instruction affected the jury's verdict or contributed to Zelenka's conviction. Therefore, we hold that the erroneous instruction was harmless.

We do not separately discuss Zelenka's claims that the jury may have understood that it could convict him of directly committing the murder of Posthuma and that, therefore, the conviction is based on insufficient evidence, or his argument that the instruction permitted his conviction on either a permissible or an impermissible legal theory. We have concluded that it was entirely clear in the context of this trial that the jury could only have understood that it could convict Zelenka as party to the murder of Posthuma if it found that he aided and abetted or conspired in Schilling's murder of Posthuma, in spite of the erroneous reference in the instructions to "the defendant." It follows from that conclusion that these arguments, both of which are based on the assumption that the jury may have mistakenly convicted Zelenka as a "direct committer" of Posthuma's murder, must fail.

## II.

Zelenka next contends that the court violated his right to due process by using Criminal 1100 to instruct the jury on the intent element of the underlying charge of first-degree murder. He maintains that the instruction contains a presumption which unconstitutionally relieves the State of its burden of persuasion on that

element. According to his oral argument, the intent element of the underlying charge was at issue at his trial because the court had erroneously instructed the jury to determine whether "the defendant" had murdered Posthuma. He further claims that other instructions by the court did not cure this defect.

Because the constitutional rights of a defendant in a criminal trial include the right to avoid conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged, the State is prohibited from using evidentiary presumptions in a jury charge that have the effect of relieving it of the burden of persuasion beyond a reasonable doubt on every essential element of a crime. *Sandstrom v. Montana,* 442 U.S. 510, 523–24 (1979).

Nonetheless, federal law recognizes that there are "rare situations" in which a reviewing court can be confident that a jury instruction which violates the *Sandstrom* standard did not play any role in the jury's verdict. *Connecticut v. Johnson,* 460 U.S. 73, 87 (1983). Specifically, in *Johnson* a plurality of the United State Supreme Court recognized that a *Sandstrom* error may be harmless if the defendant has conceded the element of the crime to which the unconstitutional instruction applies. *Id.*[4]

---

[4] *See for example, Krzeminski v. Perini,* 614 F.2d 121, 124–25 (6th Cir.) (1980), cert. denied, 449 U.S. 866 (1980), in which the federal court of appeals held that an unconstitutional presumption in a jury instruction on unlawful killing did not violate the defendant's right to due process because the defendant conceded that element of the crime, making the error harmless. *See also Washington v. Harris,* 650 F.2d 447, 453–54 (2d Cir.) (1981), cert. denied, 455 U.S.

As we discussed earlier, a fact critical to our analysis of the effect on Zelenka's verdict of alleged errors in the instructions on the elements of the underlying crime is that Zelenka did not dispute Schilling's intent to kill Posthuma. To the contrary, his testimony supported police testimony that Schilling stabbed Posthuma and intended to kill him. Zelenka argued only that he had not participated in the killing of Posthuma as an aider and abettor or a conspirator. Even assuming for the purposes of argument that the instruction was unconstitutional, the presumption language in the instruction could have prejudiced Zelenka only if Schilling's intent to kill was a disputed issue of fact at Zelenka's trial. It was not. Zelenka conceded the element of the crime to which this instruction applied. Accordingly, we conclude that the facts bring this case squarely within that category of cases in which an arguably unconstitutional instruction constitutes harmless error. *Id.* at 87.

For this reason, although Zelenka contends that the United States Supreme Court's decision in *Francis v. Franklin,* — U.S. —, 105 S. Ct. 1965 (1985) renders the presumption language in Criminal 1100 unconsti-

---

1002 (1982), in which the federal court of appeals remanded to state court the question of whether the defendant had "effectively conceded" the element of a crime to which a defective instruction applied, rendering the error harmless. For a more recent example of this approach, *see Bowen v. Kemp,* 769 F.2d 672, 677 (11th Cir.) (1985), in which the federal court of appeals ruled that the defendant's reliance on the defense of insanity conceded the intent element of the charged crime, making an unconstitutional presumption in the instruction on intent harmless error.

tutional, we do not consider the constitutionality of that language in this case.

*By the Court.*—Decision of the court of appeals is affirmed.