STATE of Wisconsin, Plaintiff-Appellant-Cross-Respondent,

v.

Jeffrey R. GROTH, Defendant-Respondent-Cross-Appellant.†

Court of Appeals

*No. 01–3000–CR. Submitted on briefs August 26, 2002.—Decided November 12, 2002.*

2002 WI App 299

(Also reported in 655 N.W.2d 163.)

† Petition to review denied 3-13-03.

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the combined brief of *Peter M. Koneazny*, assistant state public defender.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. SCHUDSON, J. The State of Wisconsin appeals from a judgment and an order, after a jury found Groth guilty of second-degree reckless homicide, party to a crime, while armed with a dangerous weapon; aiding a felon; and carrying a concealed weapon. The State argues that the trial court erred in granting Groth's postconviction motion for a new trial on the homicide charge. The State contends that the court

erred in concluding that it had erred at trial in giving WIS JI—CRIMINAL 406. The State is correct and, therefore, we reverse the postconviction order for a new trial and reinstate the judgment of conviction on the homicide charge.

¶ 2. Groth cross-appeals from the judgment of conviction and the postconviction order granting his request for a new trial but denying his request for resentencing. Groth does not challenge his convictions for aiding a felon or carrying a concealed weapon. He argues, however, that: 1) he is entitled to resentencing because, he says, he was sentenced based on inaccurate information; and 2) the court erroneously exercised sentencing discretion and denied him equal protection when it imposed significantly different sentences on him and a co-defendant. He also argues that, with respect to the homicide conviction, he is entitled to a new trial in the interests of justice as a result of what he deems confusing jury instructions, an erroneous jury instruction, and the State's misleading closing argument.

¶ 3. We reject Groth's challenges to the jury instructions and the State's closing argument. We do agree, however, that Groth is entitled to resentencing because he was sentenced based, in part, on what the State concedes was information without factual basis in the record as it comes to us. Therefore, without any need to address his additional sentencing challenge, *see Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issue need be addressed), we remand for resentencing.

# I. STATE'S APPEAL

## A. Background

¶ 4. In its postconviction decision, the trial court summarized the facts that, as relevant to the issues in this appeal, are essentially undisputed:

> Groth's convictions (along with [those of] three other co-defendants who pled guilty) stem from the early A.M. February 25, 2000 shooting death of Joseph George outside the Roadhouse Tavern in the City of Oak Creek, Milwaukee County. Groth arrive[d] at the bar on the evening of February 24th with Kevin Dane, Rodolph Lanaghan (the actual shooter) and two other co-defendants, Bradley Debraska and Kevin Ziolkowski.

> Groth planned to confront men whom he believed had attacked him outside the bar the previous week, and the group brought weapons to the scene, including a bat, a broken pool cue, brass knuckles and an inoperable .22 caliber handgun. [Groth] also requested that a friend of his, Fausto "Huffy" Delgado, bring his .38 caliber handgun to the bar. Groth secured that gun and later handed it to Lanaghan. It was that .38 which killed Joseph George.

> In the interim various meetings were held in the men's bathroom between the antagonists on each side, and many thought those meetings had resolved the differences. However, Debraska testified that Groth still wanted revenge for the beating he had sustained the prior week. Testimony revealed that Lanaghan related to Groth that the latter did not ["]have the balls to use it (the gun)["] and requested the gun from Groth. After giving the gun to Lanaghan, Groth left the bar and pulled his car nearer the entrance "in case something happened." He kept the engine running.

> Debraska then provided Lanaghan with a jacket

897

with a hood to assist the shooter in concealing his identity. Lanaghan then started firing at the bar's entrance at people exiting. Danny Oswald, one of the principal antagonists of Groth, was right next to Joseph George, and this victim, an innocent bystander, unfortunately received the fatal shot presumably intended for Oswald.

Groth then drove the group to Ziolkowski's home, where they attempted to clean and hide the gun. However, they were all picked up shortly thereafter by the police.

¶ 5. At the jury-instructions conference, the prosecutor requested WIS JI—CRIMINAL 406, modified to reflect the appropriate crimes. So modified, and as ultimately presented to the jury, the instruction states, in part:

> Section 939.05 of the Criminal Code of Wisconsin provides that whoever is concerned in the commission of a crime may be charged with and convicted of the commission of the crime although he did not directly commit it.

> The defendant is charged with being concerned in the commission of second degree reckless homicide while armed with a dangerous weapon by aiding and abetting the person who directly committed it.

> A person who intentionally aids and abets the commission of one crime is also guilty of any other crime which is committed as a natural and probable consequence of the intended crime.

> Before you may find the defendant guilty, you must be satisfied beyond a reasonable doubt that the defendant intentionally aided and abetted the commission of the crime of second degree recklessly endangering safety while armed with a dangerous weapon, that

second degree homicide while armed with a dangerous weapon was committed and that under the circumstances second degree reckless homicide while armed with a dangerous weapon was a natural and probable consequence of second degree recklessly endangering safety with a dangerous weapon.

. . . .

Finally, consider whether under the circumstances second degree reckless homicide while armed was a natural and probable consequence of second degree recklessly endangering safety while armed.

A crime is a natural and probable consequence of another crime if in light of ordinary experiences it was a result to be expected, not an extraordinary or surprising result.

The probability that one crime would result from another should be judged by the facts and circumstances known to the defendant at the time the events occurred.

If the defendant knew or if a reasonable person in the defendant's position would have known that the crime of second degree reckless homicide while armed was likely to result from the commission of second degree recklessly endangering safety while armed, then you may find that second degree reckless homicide while armed was a natural and probable consequence of second degree recklessly endangering safety while armed.

¶ 6. Groth objected to the instruction. He did so, however, arguing only that the standard instructions on second-degree reckless homicide while armed, party to the crime, without any additional instruction involving second-degree recklessly endangering safety, would be easier for the jury to understand and apply. He did not

argue that the evidence was insufficient to support the State's proposed instruction. He did not argue that second-degree reckless homicide was not a natural and probable consequence of second-degree reckless endangering safety under the circumstances of this case. And he did not argue that any specific language in the State's proposed instruction was inaccurate or confusing. The court granted the State's request.

¶ 7. In his postconviction motion, however, Groth contended that the instructions he had proposed more clearly distinguished his intentional aiding and abetting from Lanaghan's recklessness. Granting Groth's motion, the trial court concluded:

> [Second-degree reckless homicide while armed, party to the crime] is not the natural and probable consequence of second-degree recklessly endangering safety, since there is no evidence as to what [Groth] actually intended. [Groth's] theory was that the weapons brought to the tavern were for self-defense in the event a confrontation occurred. He was not sure what would happen after he provided Lanaghan with the .38 caliber gun.

## B. Discussion

¶ 8. A trial court has broad discretion in instructing a jury but must exercise that discretion in order to fully and fairly inform the jury of the applicable rules of law. *State v. Coleman*, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996). Whether a crime charged was a natural and probable consequence of the crime with which a defendant allegedly assisted is a factual issue for the jury. *State v. Ivy*, 119 Wis. 2d 591, 601, 350 N.W.2d 622 (1984). Whether a jury instruction is appropriate, under the given facts of a case, is a legal issue subject to

independent review. *See State v. Pettit*, 171 Wis. 2d 627, 638, 492 N.W.2d 633 (Ct. App. 1992).

¶ 9. Whether a jury instruction violated a defendant's right to due process is a question of law subject to our *de novo* review. *Id.* at 639. In reviewing a claimed jury instruction error, we do not view the challenged words or phrases in isolation. *Id.* at 637. Rather, jury instructions "must be viewed in the context of the overall charge." *Id.* Relief is not warranted, however, unless the court is "persuaded that the instructions, when viewed as a whole, misstated the law or misdirected the jury" in the manner asserted by the challenger to the instruction. *Id.* at 638.

¶ 10. WISCONSIN JI—CRIMINAL 406 defines aiding-and-abetting liability in circumstances under which a person who intentionally aides and abets the commission of one crime is also guilty of any other crime (committed in the course of the intended crime) that is a natural and probable consequence of the intended crime. Here, the prosecutor requested the instruction to link Groth's committed crime (second-degree reckless homicide while armed) to his intended crime (second-degree recklessly endangering safety).

¶ 11. The State's request was perfectly reasonable; the instruction reflected the facts of the case. The trial court's trial decision was correct; its postconviction determination was not.

¶ 12. As the State correctly argues, the evidence of what Groth actually intended—second-degree recklessly endangering safety while armed—was virtually undisputed. Groth and his accomplices, intending to retaliate against someone who had attacked him, came

armed to a tavern to confront Groth's assailant. Groth, as the trial court summarized, "secured" the murder weapon and "handed it" to Lanaghan, who shot and killed Joseph George. Groth was waiting nearby as the getaway driver. As the State explains, "Death was particularly foreseeable under the circumstances . . . because the intended crime was not just recklessly endangering safety, but recklessly endangering safety while armed with a dangerous weapon, and the resulting charged crime was second-degree reckless homicide while armed with a dangerous weapon; the dangerous weapon involved was a gun."

¶ 13. The facts of this case, therefore, were perfectly suited to the standards of Wis JI—Criminal 406. Both the intended crime and the charged crime carried the same element of reckless conduct—conduct that creates an unreasonable risk of death or great bodily harm, and the actor's awareness of such risk. *See* Wis JI—Criminal 1060; *see also State v. Asfoor*, 75 Wis. 2d 411, 427–34, 249 N.W.2d 529 (1977). Indeed, on appeal, Groth accentuates this very point and, primarily, merely argues that the 406 instruction was "confusing . . . because it was difficult to apply and served no useful purpose."

¶ 14. The postconviction court concluded that Wis JI—Criminal 406 was improper "since there [was] no evidence as to what the defendant actually intended." We disagree. Indeed, the evidence was overwhelming that Groth intended armed retaliation; he intentionally assisted Lanaghan in obtaining the gun Lanaghan fired into a group of people, killing an innocent victim. Unquestionably, Groth's conduct was reckless; it endangered many people and, as a natural and probable consequence, it was a substantial factor causing Joseph George's death.

¶ 15. Therefore, we conclude that the trial court correctly granted the State's request to utilize Wis JI—Criminal 406 but, in its postconviction decision, incorrectly found fault with its ruling. Accordingly, we reverse the postconviction order granting Groth's motion for a new trial.

## II. Groth's Cross-Appeal

### A. Sentencing

#### 1. Background

¶ 16. At sentencing, the prosecutor offered his recommendation stating, in part:

> [Groth] has a history of violence against the child who bore his child, *this young woman who[m] he impregnated and then beat,* threatened, threatened with weapons.

> You know, Your Honor, I was raised to believe that men who strike women are cowards and are not fit to sit in the company of other men. That's something my father taught me, and it's a lesson that I always wholeheartedly believed.

> I didn't get the presentence investigation [report] until this morning. I have to say that one of the things that I just couldn't understand was how a person in Jeffrey Groth's shoes could take a punch to the face and get knocked out and then decide that the appropriate remedy to that was to load his car with thugs and weapons including guns and arrange for other guns to be brought to the scene to settle this dispute where he got punched in the face.

> But this presentence investigation report gives me a whole new understanding of Jeffrey Groth and one

which I admit I really hadn't quite grasped as I was prosecuting him, as I was preparing this case for trial, and as I was trying it.

This defendant is a thug and he's a coward. He beats up women. *He beats up women who are pregnant.*

(Emphasis added.) Later in his recommendation, the prosecutor returned to the same theme stating: "[Groth]'s a thug. He's a woman beater. *He beats women who are pregnant.*" (Emphasis added.)

¶ 17. Sentencing Groth, the court commented that Groth had "treated" his girlfriend, who was pregnant at the time of sentencing, "with disrespect *as pointed out by [the prosecutor].*" (Emphasis added.)

¶ 18. Groth moved for resentencing alleging, with support from an affidavit from his girlfriend, that he had been sentenced based on inaccurate information about "beating pregnant women." In response to Groth's motion, the prosecutor wrote:

The State did not misrepresent the defendant's prior history with respect to domestic violence. The defendant has repeatedly beat [his girlfriend] as [she] herself has indicated in previous moving court documents when she sought a restraining order against the defendant. However, the prosecutor did argue at the time of sentencing that the defendant beat "pregnant women." At this time, almost one year after the sentencing, the prosecutor has no recollection of what the factual basis was for that representation. *The prosecutor now concedes in reviewing the sentencing transcript and also the pre-sentence investigative report, along with all of the police reports which accompanied this case, that the prosecutor cannot find any factual basis for the representation that the defendant beats "pregnant women."*

(Emphasis added.)

904

¶ 19. In his motion, Groth also contended·that he had not received the presentence report until the morning of sentencing, that he had had only a "very brief" conversation about its contents with defense counsel, that he "did not specifically discuss the details of the report," and that he "was sentenced without an opportunity to understand and respond" to the presentence. He contended that several statements in the presentence were inaccurate, and he specifically supported all his contentions with affidavits—from postconviction counsel, an investigator from the State Public Defender's Office, his girlfriend, and himself. Groth also asserted that counsel was ineffective for failing to object to the "timeliness" of the presentence and to the inaccuracy of some of its information, and, implicitly, for failing to adequately confer with him and prepare for sentencing.

¶ 20. In its written decision addressing Groth's postconviction motion, the court noted that because it was ordering a new trial, "all the rest [of the issues Groth had raised in his motion] would be moot." The court added, however, that it "believe[d] none of the balance ha[d] merit." And the court did comment on the prosecutor's comments about beating pregnant women:

> Concerning the prosecutor's reference to Groth beating up pregnant women, the court did not take into account that erroneous allegation. Rather[,] the presentence report reflected that defendant had treated his girlfriend with disrespect and that was commented upon during the court's sentencing. More important, the sentence given primarily reflected upon what took place at the Roadhouse Tavern and events leading up to same.

The court did not address any of Groth's other allegations that he had been sentenced based on inaccurate

information. The court also did not address Groth's allegation that counsel had rendered ineffective assistance at sentencing, except with respect to counsel's failure to object to the comments about beating pregnant women, which the court termed "a minor flaw in his defense of Groth" that had not made any difference.

## 2. Discussion

■■■■

¶ 21. A defendant has a due process right to be sentenced based on accurate information. *State v. Johnson*, 158 Wis. 2d 458, 468, 463 N.W.2d 352 (Ct. App. 1990) (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972)). Whether a defendant has been denied the due process right to be sentenced based on accurate information is a "constitutional issue" presenting "a question of law which we review *de novo.*" *State v. Coolidge*, 173 Wis. 2d 783, 789, 496 N.W.2d 701 (Ct. App. 1993).

■■■■

¶ 22. A defendant who asks for resentencing because the court relied on inaccurate information must show both that the information was inaccurate and that the court relied on it. *Id.* The defendant carries the burden of proving both prongs—inaccuracy of the information and prejudicial reliance by the sentencing court—by clear and convincing evidence. *Id. See also State v. Littrup*, 164 Wis. 2d 120, 132, 473 N.W.2d 164 (Ct. App. 1991). Once a defendant does so, the burden shifts to the State to show that the error was harmless. *State v. Anderson,* 222 Wis. 2d 403, 410–11, 588 N.W.2d 75 (Ct. App. 1998). An error is harmless if there is no reasonable probability that it contributed to the outcome. *Id.* at 411.

¶ 23. Moreover, as we have explained, "the integrity of the sentencing process" depends on certain "safeguards" to assure the opportunity to address and correct any possible inaccuracies. *See State v. Mosley*, 201 Wis. 2d 36, 44, 547 N.W.2d 806 (Ct. App. 1996).

> To protect the integrity of the sentencing process, the court must base its decision on reliable information. Several safeguards have been developed which effectively protect the due process right of a defendant to be sentenced on the basis of true and correct information. The defendant and defense counsel are allowed access to the presentence investigation report and are given the opportunity to refute what they allege to be inaccurate information.

*Id.* (citations omitted). A defendant's right to be sentenced based on accurate information includes not only the opportunity to challenge information in a presentence, *see State v. Perez*, 170 Wis. 2d 130, 141–42, 487 N.W.2d 630 (Ct. App. 1992), but also, through the right of allocution, the "opportunity to make a statement with respect to any matter relevant to the sentence," Wis. Stat. § 972.14(2). Where, however, a defendant fails to object to allegedly erroneous information presented at sentencing, and fails to challenge the information when exercising the right of allocation, *see* Wis. Stat. § 972.14(2), we determine whether the sentencing court erroneously exercised discretion in considering the information. *See Mosley*, 201 Wis. 2d at 45–46.

¶ 24. At sentencing, Groth did not challenge the prosecutor's references to the beating of pregnant women. His silence stood as a tacit acknowledgement that the information was true. *See id.* at 46 ("Because [defendant] did not contest accuracy of [detective's] statements, the court did not [erroneously exercise] its

discretion by considering them."). Thus, we see no basis on which to conclude that the sentencing court erroneously exercised discretion in considering the prosecutor's comments.

¶ 25. The State argues that Groth, having failed to object to or dispute the prosecutor's comments, waived the right to complain on appeal that he was sentenced based on inaccurate information. Whether, given the paramount importance of the "integrity of the sentencing process," *see id.* at 44, waiver may be invoked to preclude a defendant's challenge to a sentencing based on inaccurate information remains unclear; the cases the parties cite simply do not say. What is clear, however, is that despite a defendant's failure to object to or dispute the information, we may address the merits of the defendant's claim. *See Johnson,* 158 Wis. 2d at 468–71 (despite failure to object to allegedly inaccurate information presented at sentencing, appellate court addressed merits of claim that defendant was sentenced based on inaccurate information). Indeed, despite the failure to object, a defendant may be entitled to resentencing if the sentence was "affected by a trial court's reliance on an improper factor"; we may "ignore the waiver." *State v. Leitner,* 2001 WI App 172, ¶¶ 39, 41, 42, 247 Wis. 2d 195, 633 N.W.2d 207, *aff'd,* 2002 WI 77, 253 Wis. 2d 449, 646 N.W.2d 341.

¶ 26. Here, fairness—to both Groth and the State—requires that we "ignore the waiver." *See id.* at ¶ 42. The State has conceded that the information about beating pregnant women was presented to the sentencing court without factual basis that is discernable from the record as it comes to us. Moreover, Groth's allegations, specifically and substantially supported by affida-

vits accompanying his postconviction motion, reached the issues of whether he was sentenced based on "true and correct information," and whether he was "given the opportunity to refute what [he] allege[d] to be inaccurate information." *See generally id.* Thus, even if waiver were applied, the merits of Groth's motion for resentencing still would be reached within an ineffective-assistance-of-counsel context, *see Anderson,* 222 Wis. 2d at 405, 408–12, although the standards we would apply would be different, *see Kimmelman v. Morrison,* 477 U.S. 365, 374–75 (1986).

¶ 27. Notwithstanding the postconviction court's disclaimer of reliance on the inaccurate information about beating pregnant women, we conclude, for three reasons we will explain, that the record establishes a very strong likelihood that the sentencing court did indeed rely on the information. Further, the State has not established that the error was harmless. *See Anderson,* 222 Wis. 2d at 411.

¶ 28. A postconviction court's assertion of non-reliance on allegedly inaccurate sentencing information is not dispositive. *Id.* at 409–10. We may independently review the record to determine the existence of any such reliance. *See id.* at 407–10. Here, we conclude that the sentencing court relied on what the State concedes was information the prosecutor presented, without any discernable basis in the record as it comes to us, about beating "pregnant women."

¶ 29. First, the postconviction court's decision declaring its non-reliance was, at least in part, factually inaccurate. Disclaiming reliance on the inaccurate information, the decision stated that, in sentencing, the court had merely relied on the presentence report's

reference to "disrespect." At the sentencing, however, the court commented on Groth's "disrespect *as pointed out by [the prosecutor]*." (Emphasis added.) That "disrespect," *as pointed out by the prosecutor at sentencing,* included three explicit references to beating pregnant women.

¶ 30. Second, the postconviction court's disclaimer of reliance on the information about beating pregnant women did not account for the extent to which the sentencing court may well have been influenced indirectly *through the prosecutor's recommendation* that was based on *his* impression that Groth beat pregnant women. After all, the prosecutor emphasized that his recommendation had been influenced by the "new understanding of Jeffrey Groth" he had gained from the presentence, and that an important part of that "new understanding" derived from the knowledge that Groth "beats up women who are pregnant." Unquestionably, the prosecutor's recommendation was among the components considered by the court in reaching its sentencing decision. But that recommendation was based, in part, on precisely what the prosecutor later conceded was unsupported by the record.

¶ 31. Third, the beating of pregnant women is so heinous that it would be difficult (if not impossible or improper) for any sentencing court to ignore it as an aggravating factor affecting the assessment of a defendant's character. Thus, a postconviction court's disclaimer of reliance, particularly where the prosecutor has emphasized that that very fact influenced his recommendation, is difficult to accept.

¶ 32. Moreover, even if some doubt about the sentencing court's reliance may linger, Groth's other challenges to the accuracy of the sentencing information, adequately supported by affidavits, would require

further trial court consideration. Therefore, rather than requiring a complicated evidentiary hearing on whether, and to what extent or consequence, any of the information may have been inaccurate (and possibly also requiring an evidentiary hearing on whether Groth was afforded an adequate opportunity to examine the presentence and respond, and on whether counsel was ineffective), we conclude that resentencing is the most prudent approach to assure "the integrity of the sentencing process." *Mosley*, 201 Wis. 2d at 44.

¶ 33. Additionally, we note, at the resentencing, the State is not precluded from presenting information regarding whether Groth had any history of beating pregnant women. And, of course, Groth may offer information to dispute the State's assertions. As we have intimated, such alleged conduct certainly would be salient to a fair assessment of a defendant's character.

¶ 34. Accordingly, we conclude that the record establishes both the State's conceded present inability to discern a factual basis for the information it presented about beating pregnant women and the sentencing court's apparent, consequential reliance on those allegations in sentencing Groth. Thus, "the integrity of the sentencing process" requires resentencing, for which Groth will have the full opportunity to review the presentence investigation report, and at which the court can consider any additional challenges to its contents, as well as any argument Groth may offer regarding the proportionality of his sentences and those of the co-defendants.

## B. Additional Arguments

¶ 35. Groth also argues that, should we agree with the State's challenge to the order for a new trial, we should, nonetheless, order a new trial in the interests of justice. In addition to re-wrapping his earlier arguments on the jury instructions, he points to: (1) an error in the jury instructions—the trial court's reference to "the defendant" rather than the "principal" in the shooting; and (2) an error in the prosecutor's closing argument—a statement that the jury is not to give the defendant the benefit of every reasonable doubt. Groth also asserts that the prosecutor erroneously argued that he had the getaway car waiting with the door open. His arguments have little merit.

¶ 36. As applicable to Groth's arguments, Wis. Stat. § 752.35 provides:

> **Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record[,] and may . . . remit the case to the trial court . . . for a new trial . . . .

Here, while Groth properly points to certain misstatements by both the court and prosecutor, he has failed to establish the slightest probability that justice miscarried.

¶ 37. The trial court's erroneous reference to "the defendant" in the jury instructions would not have misled the jury; the balance of the instructions, the arguments, and, indeed, the entire trial clearly distinguished between the defendant and the shooter. *See*

*State v. Zelenka*, 130 Wis. 2d 34, 49–52, 387 N.W.2d 55 (1986) (in trial of defendant for being party to the crime of first-degree murder, jury instruction erroneously referring to "the defendant" rather than to the person who directly committed the murder was harmless error where the "record in its entire[t]y unquestionably support[ed] the conclusion that the jury could not have [mis]understood" the distinction between the defendant and the person who directly committed the crime). Similarly, the prosecutor's single misstatement about reasonable doubt was an obvious slip-of-the-tongue, completely countered by the balance of his argument, the defense argument, and the jury instructions.

¶ 38. Groth contends that the prosecutor, in his closing argument, incorrectly stated that he, as the getaway driver, had the car door open for Lanaghan when, in fact, "the only evidence on point was that it was closed until [another accomplice] ran to the car ahead of Lanaghan." Groth, however, fails to explain how this distinction could have made any difference. *See Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995) (appellate court need not address "amorphous and insufficiently developed" argument). Even assuming Groth's view of the evidence is correct, he has offered nothing to establish that the real controversy was not fully tried or that justice miscarried. *See* Wis. Stat. § 752.35.

### III. CONCLUSION

¶ 39. Therefore, we reverse the postconviction order granting Groth's motion for a new trial and denying his motion for resentencing, affirm the judg-

ment of conviction for aiding a felon and carrying a concealed weapon, reinstate the judgment of conviction for second-degree reckless homicide, party to a crime, while armed with a dangerous weapon, and remand for resentencing.[1]

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.

---

[1] Groth was sentenced on all three counts at the same hearing and, therefore, the court's determination of his sentence on any of the counts may well have affected its determination and structuring of his sentences on all three. Neither party on appeal has suggested otherwise. Therefore, although Groth has not challenged his convictions for aiding a felon and carrying a concealed weapon, his resentencing should encompass those counts as well as the homicide. *See State v. Anderson*, 222 Wis. 2d 403, 409–12, 588 N.W.2d 75 (Ct. App. 1998).