State of Wisconsin, Plaintiff-Respondent,
v.
Peter A. Fonte, Defendant-Appellant.
No. 03-2097-CR.
Court of Appeals of Wisconsin.
Opinion Filed: August 4, 2004.
Before Anderson, P.J., Brown and Snyder, JJ.
¶1 SNYDER, J.
Peter A. Fonte appeals from a judgment of conviction finding him guilty of homicide by intoxicated operation of a vehicle. Fonte contends that there was insufficient evidence to convict him, he was denied effective assistance of counsel, he was entitled to a change of venue, and he was denied a fair trial due to an improper jury instruction.[1] We agree that the jury was improperly instructed with regard to the element of intoxication and that this resulted in an unfair advantage for the prosecution. Accordingly, we reverse the judgment of conviction and remand for a new trial.

FACTS
¶2 On July 16, 2001, several days after attending a concert at Alpine Valley, Fonte and a group of friends gathered in Lake Geneva. Fonte and his friends rented a motorboat to spend the day on Geneva Lake before they went their separate ways. The group included Fonte, Kelly Pleffner, Chad Mattingly, Traci Paladino, Lee Bovarnick, and Christopher Gibbs. Gibbs was the first driver of the boat. The group constructed a makeshift floating tube out of life jackets so people could be towed behind the boat, and Fonte was the first person to be towed.
¶3 Sometime thereafter, when Fonte was back in the boat, at least four people jumped into the water to swim, including Pleffner, Paladino and Gibbs. Pleffner testified that the motor was idling and the boat was drifting while they swam. Pleffner saw the boat coming towards her when it was approximately five feet away. She attempted to dive below the surface to avoid it, and felt the bottom of the boat scrape her side. When Pleffner returned to the surface of the water, she saw Gibbs and heard someone ask, "Where's Traci?" Pleffner then noticed that there was blood in the water. Several members of the group jumped into the water to search for Paladino. The Water Safety Patrol arrived and shortly thereafter a dive team took up the search.
¶4 Walworth county sheriff's deputies took the group to the City of Lake Geneva Police Department where officers separated them for individual questioning. Walworth County Deputy Sheriff Jeffery Patek interviewed Fonte at the police department. Fonte identified himself as Anthony Michaels to the officer. Patek smelled intoxicants coming from Fonte and noticed that his eyes were bloodshot and his speech was impaired. Patek asked Fonte if he had been drinking and Fonte stated that he had not. Patek performed the horizontal gaze nystagmus test on Fonte. Based on the results of this test, Patek concluded that Fonte was "under the influence of intoxicants." Ten members of the group of friends were given breathalyzer tests. The test detected the presence of alcohol in Fonte's system, registering a blood alcohol content (BAC) of .06% at approximately 9:00 p.m.
¶5 Patek asked Fonte if there was anything Fonte needed to tell him. Fonte told Patek that when the swimmers jumped into the water he believed he had put the boat into neutral. Fonte then stated that he stood up from the controls and walked away. Patek placed Fonte under arrest and Fonte submitted to a blood draw at approximately 10:42 p.m., the results of which indicated that his BAC was.052%.
¶6 Fonte was charged with homicide by the operation or handling of a vehicle while under the influence of an intoxicant and with a prohibited alcohol concentration contrary to WIS. STAT. § 940.09(1)(a) and (b). Paladino's body was recovered approximately five months after the accident and the parties stipulated that the boat propeller caused her death.
¶7 Fonte identified himself as Anthony Michaels at his first court appearance on July 17, 2001. At his next appearance on July 23, 2001, the State disclosed that the defendant's real name was Peter Fonte. The State further indicated that Fonte had used other aliases in the past and that he had pending warrants for his failure to appear in court.
¶8 On February 28, 2002, the trial court heard Fonte's motion for a change of venue. Fonte argued that his right to a fair trial was violated because extensive pretrial publicity significantly prejudiced his ability to have an impartial and unbiased jury. Newspaper articles reported that Fonte had been the driver of the boat that hit Paladino, that Fonte had been drunk at the time, and that Fonte had a "long multi-state criminal history." Between July 16, 2001, and February 19, 2002, Walworth county area newspapers had published forty-four articles about Fonte and the boating incident. The court ruled that the newspaper articles were not inflammatory, denied the motion for a change of venue, and stated that a fair trial could be achieved through careful screening of the jury.
¶9 The trial began on March 11, 2002. The subject of pretrial publicity was revisited because several local newspapers had published articles reporting that numerous syringes had been found in Fonte's hotel room while the group was in Lake Geneva. The trial court stated that it had previously ruled that such evidence would not be admissible at trial. The court also stated that individual voir dire would be conducted to identify any potential jurors who had been "tainted" by the pretrial publicity.
¶10 The trial proceeded and Fonte was convicted. The trial court imposed a twenty-five year bifurcated sentence, consisting of seven years of confinement and eighteen years of extended supervision. Fonte filed a motion for postconviction relief, alleging several errors at trial. The court denied the motion. Fonte appeals from the judgment of conviction and requests a new trial.

DISCUSSION
¶11 We begin our analysis with Fonte's challenge to the jury instruction because it is the dispositive issue. A trial court has broad discretion in deciding whether to give a particular jury instruction and the court must exercise its discretion to "fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." State v. Coleman, 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996). However, we will independently review whether a jury instruction is appropriate under the specific facts of a given case. State v. Groth, 2002 WI App 299, ¶8, 258 Wis. 2d 889, 655 N.W.2d 163, review denied, 2003 WI 32, 260 Wis. 2d 752, 661 N.W.2d 100 (Wis. Mar. 13, 2003) (No. 01-3000-CR).
¶12 The State, by charging Fonte with homicide by intoxicated operation of a vehicle, was required to prove that Fonte was intoxicated at the time the motorboat collided with Paladino. See WIS. STAT. § 940.09(1)(a), (1c) (A person who "[c]auses the death of another by the operation or handling of a vehicle while under the influence of an intoxicant" is guilty of a Class D felony.). Specifically, the State's burden was to prove that Fonte was intoxicated at approximately 3:45 p.m. on July 16, 2001.
¶13 Wisconsin law provides that the State may prove intoxication through chemical tests. WIS. STAT. § 885.235. However, the law distinguishes between chemical tests administered within three hours of the event to be proved and chemical tests administered beyond the three-hour window of time.
[E]vidence of the amount of alcohol in the person's blood at the time in question, as shown by chemical analysis ... is admissible on the issue of whether he or she was under the influence of an intoxicant ... if the sample was taken within 3 hours after the event to be proved.
Sec. 885.235(1g). If a test is administered more than three hours after the incident, evidence of the blood alcohol level is admissible only if expert testimony establishes its probative value and the results of the test may be given prima facie effect only if the effect is established by expert testimony. Sec. 885.235(3).
¶14 The standard jury instruction at issue here, WIS JICRIMINAL 1185, reflects the statutory presumption accorded to tests administered within three hours. The relevant portion of WIS JICRIMINAL 1185 opens as follows: "Evidence has been received that, within three hours after the defendant's alleged operating of a vehicle, a sample of the defendant's (breath)(blood)(urine) was taken."[2] The instruction then advises that if the jury finds beyond a reasonable doubt that the defendant's blood alcohol content was .10% or more when the test was given, it "may find from that fact alone" that the defendant was intoxicated at the time of the event. Id.
¶15 Here, no chemical test of Fonte's breath, blood or urine was performed within three hours of the boating incident. Therefore, the State's chemical test evidence is stripped of the statutory presumption and removed from that category of evidence referenced in WIS JICRIMINAL 1185.
¶16 The timing of the blood test was a key factor in Fonte's theory of defense, which relied on the "blood alcohol curve." Fonte argued that the blood test administered more than seven hours after the collision showed intoxication because he had consumed whiskey immediately prior to the collision, but that at the time of the incident not enough alcohol had been absorbed into his bloodstream to render him intoxicated. See State v. Vick, 104 Wis. 2d 678, 683, 312 N.W.2d 489 (1981). The key to the defense, therefore, was the alcohol absorption rate. For this reason, Fonte asserts, the jury instruction on intoxication was particularly critical.
¶17 The trial court nonetheless gave a modified version of WIS JI CRIMINAL 1185 to the jury. The trial court omitted the reference to the three-hour window and instructed the jury as follows:
Evidence has been received that a sample of the defendant's breath and blood were taken  was taken. An analysis of the samples has also been received. If you are satisfied beyond a reasonable doubt that there was .10% or more by weight of alcohol in the defendant's blood, or .10 grams or more of alcohol in 210 liters of the defendant's breath at the time of operation, you may find from that fact alone that the defendant was under the influence of an intoxicant at the time of the alleged operating, but you are not required to do so.
¶18 This modification does not resolve the fact that WIS JICRIMINAL 1185 was created for a specific purpose and is not appropriate for cases where a chemical test was performed outside the three-hour window. In fact, as crafted by the trial court, it is more confusing than helpful to the jury. The instruction opens by stating that "[e]vidence has been received" and refers the jury to the chemical test of the blood or breath. Omission of the three-hour parameter does not take the focus off of the chemical test, but instead broadens the instruction to include any chemical test entered into evidence. After drawing the jury's attention to the blood test evidence, which was obtained more than seven hours after Fonte was on the boat, the court then instructed the jury that if it found that Fonte's BAC was.10% or more at the time of operation, it could find from that fact alone that he was under the influence of an intoxicant at the time of operation. The instruction becomes circuitous and confusing. "The validity of the jury's verdict depends on the correctness of the jury instructions which the jury is charged to follow." State v. Dodson, 219 Wis. 2d 65, 87, 580 N.W.2d 181 (1998). Here, the misleading and confusing nature of the jury instruction undermines our confidence in the jury's verdict. See id. at 88.
¶19 Worse, the modified instruction suggests a connection between the blood test results and Fonte's BAC at the time he was operating the boat. In order for an instruction that presents a rebuttable presumption or a permissive inference to pass constitutional muster, it must be presented in such a manner that the jury is fully apprised of its option to reject its application. There must be a "rational connection between the fact proved and the ultimate fact presumed." United States v. Romano, 382 U.S. 136, 139 (1965).
¶20 Fonte argues that the jury instruction given by the court allowed the jury to draw an inference unwarranted by statute and thereby gave the State an unfair advantage in the matter of proof of the element of intoxication. We conclude that the instruction given to the jury did indeed suggest a rational connection between the fact proven (that Fonte's BAC at approximately 10:42 p.m. was .052%) and the fact presumed (that Fonte was under the influence of an intoxicant at approximately 3:45 p.m.). See id. We further conclude that this presumptive inference was unwarranted under WIS. STAT. § 885.235(1g) because the chemical test was administered more than three hours after Fonte operated the boat. A jury instruction is tainted and in error if a reasonable juror could misinterpret the instruction to the detriment of a defendant's due process rights. State v. McCoy, 143 Wis. 2d 274, 289, 421 N.W.2d 107 (1988). "Misleading instructions ... which may cause jury confusion are a sufficient basis for a new trial." Runjo v. St. Paul Fire & Marine Ins. Co., 197 Wis. 2d 594, 603, 541 N.W.2d 173 (Ct. App. 1995). Because we hold that the jury instruction was misleading, improperly favored the State, and deprived Fonte of a fair trial, we reverse the judgment of conviction and remand for a new trial.
¶21 Fonte also raised three additional challenges to his conviction. Generally, when the resolution of one issue disposes of an appeal, we will not address additional issues. Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663 (1938). Therefore, we need not address Fonte's challenge to the sufficiency of the evidence nor the effectiveness of his trial counsel. Fonte's assertion that a change of venue was warranted may be readdressed on remand to assure a fair and impartial trial.

CONCLUSION
¶22 We conclude that the modified version of WIS JICRIMINAL 1185 that was given to the jury was circuitous and confusing. It also suggested a rational connection between the proven fact of Fonte's BAC at approximately 10:42 p.m. and the presumed fact that he was under the influence of an intoxicant at approximately 3:45 p.m. See Romano, 382 U.S. at 139. We hold that this was improper under WIS. STAT. § 885.235(1g) because the chemical test was administered more than three hours after Fonte operated the boat. The error resulted in a presumptive inference that favored the prosecution and resulted in an unfair trial. We reverse the judgment of conviction and remand for a new trial.
By the Court.  Judgment reversed and cause remanded with directions.
NOTES
[1] Fonte also challenged the constitutionality of WIS. STAT. § 940.09 (2001-02), but abandoned the issue in his reply brief, stating that "[b]oth parties agree that this court is bound by State v. Caibaiosai, 122 Wis. 2d 587, 363 N.W.2d 574 (1985), which upheld the constitutionality of Wis. Stat. § 940.09." All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] We note that the jury instruction language at issue here appeared in the 1993 version of WIS JICRIMINAL 1185, which is the version used at trial. WISCONSIN JICRIMINAL 1185 was revised in 2004.